## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| AREBE TAYLOR, | } | |
| Plaintiff, | } | Civil Action No. |
| | } | |
| vs. | } | |
| | } | |
| BOARD OF REGENTS OF THE UNIVERSITY | } | |
| SYSTEM OF GEORGIA d/b/a THE | } | |
| UNIVERSITY OF GEORGIA, | } | JURY DEMAND |
| Defendant, | } | |

## **COMPLAINT**

COMES NOW, AREBE TAYLOR (hereafter referred to as "Plaintiff"), in the above-styled case, and files this Complaint against the BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA d/b/a THE UNIVERSITY OF GEORGIA (hereafter referred to as "UGA" or "Defendant"), and shows this Honorable Court the following:

TABLE OF CONTENTS

PARTIES..................................................................................................3

JURISDICTION AND VENUE ...............................................................4

FACTS AS TO UGA ...............................................................................5

FACTS AS TO PLAINTIFF.....................................................................9

   A.    PLAINTIFF'S ACADEMIC PROGRESS AT UGA...................12

   B.    REPORTED PLAGIARISM.........................................................15

   C.    FACILITATED DISCUSSION ...................................................16

   D.    CONTINUED DISCUSSION ......................................................20

   E.    AHP'S DECISION AT PLAINTIFF'S CONTINUED DISCUSSION......28

   F.    UGA'S DISMISSAL OF PLAINTIFF .........................................31

   G.    PLAINTIFF'S APPEAL OF UGA'S DISMISSAL.....................36

   H.    OTHER POLICY VIOLATIONS AND ADDITIONAL FACTS.............37

COUNT I - VIOLATION OF PROCEDURAL DUE PROCESS § 1983 ..............44

COUNT II - VIOLATION OF SUBSTANTIVE DUE PROCESS § 1983 ...........53

COUNT III - RACE AND NATIONAL ORIGIN DISCRIMINATION 42 U.S.C. § 2000d..................................................................................................66

COUNT IV - RACE DISCRIMINATION 42 U.S.C. § 1981 ................................72

COUNT V - BREACH OF CONTRACT................................................................78

COUNT VI - UNJUST ENRICHMENT ................................................................88

PRAYER - COUNT I - VIOLATION OF PROCEDURAL DUE PROCESS - 42 § 1983..................................................................................................92

PRAYER - COUNT II - VIOLATION OF SUBSTANTIVE DUE PROCESS - 42 § 1983 ...........................................................................................93

PRAYER - COUNT III - RACE AND NATIONAL ORIGIN DISCRIMINATION - 42 U.S.C. 2000d (TITLE VI) ...............................................................95

PRAYER - COUNT IV - RACE DISCRIMINATION 42 U.S.C. 1981 .................96

PRAYER - COUNT V - BREACH OF CONTRACT ...........................................97

PRAYER - COUNT VI - UNJUST ENRICHMENT ............................................97

*PARTIES*

1.

Plaintiff is a resident of Gwinnett County, Georgia.

2.

UGA is a public research university and has presently and has at all relevant times herein had its main campus at and around 220 South Jackson Street, Athens, Georgia 30602-1661(Clarke County). UGA has numerous satellite campuses, including the Gwinnett Campus at 2530 Sever Road, Lawrenceville, Georgia, 30043, at which many events in this case took place.

3.

Process may be served upon UGA through Chancellor of the Board of
Regents of the University System of Georgia, to wit Dr. Steve Wrigley, at 270
Washington Street, S.W., Atlanta, GA 30334.

*JURISDICTION AND VENUE*

4.

Pursuant to 28 U.S.C. § 1331 [federal question] and 28 U.S.C. § 1343 [civil
rights], this Court has original jurisdiction over the claims set forth in Counts I-IV
of Plaintiff's Complaint about violations of due process, race discrimination, and
national origin discrimination, which arise under 42 U.S.C. § 1983, as amended, 42
U.S.C. § 2000d *et seq*., as amended (Title VI), and 42 U.S.C. § 1981, as amended.

5.

Pursuant to 28 U.S.C. § 1367 [supplemental jurisdiction] and 28 U.S.C. §
1391 [venue], this Court has supplemental jurisdiction over the state law claims set
forth in Counts V and VI of Plaintiff's Complaint about breach of contract and
unjust enrichment upon consent by the state.

6.

Jurisdiction and venue are therefore proper in this action.

*FACTS AS TO UGA*

7.

UGA is a public research university with 29,765 undergraduates, 9,382 graduate/professional students, and a part of the University System of Georgia.

8.

The University System of Georgia has 341,485 students, roughly the population of each of the following countries (not all combined): Belize, The Bahamas, Barbados, and Iceland.  Many countries are much smaller, and many more are not that much more populous.

9.

UGA is both a privately and federally funded public educational institution.

10.

UGA receives federal financial assistance.

11.

UGA employs 10,856 people and the University System of Georgia employs 157,770 people.

12.

UGA is accredited by the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC), the Council on Education for Public Health (CEPH), and the National Environmental Health Sciences and Protection Accreditation Council (EHAC).

13.

At all times material herein, UGA operated a place of education and research, and was a degree granting institution.

14.

According to UGA's website, the Department of Health Policy and Management is, "dedicated to preparing its student to be leaders in the public health field," and "[a]reas of study include policy analysis, public health law and ethics, health economics, health care finance, public health and health care system management with the aim of improving health care quality and access."

15.

During Plaintiff's DrPH studies at UGA, Dr. Stuart Feldman was the Interim Head and Graduate Coordinator of UGA's Department of Health Policy and Management (hereafter referred to as "HPAM") and a professor emeritus.

16.

During Plaintiff's DrPH studies at UGA, Dr. Brittani L. Harmon was the

Doctor of Public Health (hereafter referred to as "DrPH") Program

Director/Coordinator for UGA's Department of HPAM and a clinical assistant

professor.

17.

UGA's DrPH program is controlled and supervised by the DrPH Steering

Committee.

18.

The DrPH Steering Committee is in charge of approving students to take the

Doctor of Public Health Comprehensive Examination Course (hereafter referred to

as "comprehensive exam course").

19.

During Plaintiff's DrPH studies at UGA, the DrPH Steering Committee was

chaired by Dr. Brittani L. Harmon and its other members included Dr. Stuart

Feldman, Dr. Donald Lloyd, Dr. Mary Ann Johnson, and Ms. Dell Whitehead.

20.

During Plaintiff's DrPH studies at UGA, a DrPH Advisory Committee was

to be appointed to a student before the end of their first year of residence in the

DrPH program and,

> "The advisory committee, in consultation with the student, is charged with
> planning the student's program of study. It is also charged with approving
> the program of study, arranging the comprehensive written and oral
> examinations, approving a subject for the dissertation, approving the
> completed dissertation, and approving the student's defense of his or her
> research. The committee should advise the student of required research skills
> and other requirements." See Exhibit A.

21.

During Plaintiff's DrPH studies at UGA, the comprehensive exam course

was to be administered by a student's Advisory Committee. See Exhibit B.

22.

Despite asking all throughout his DrPH studies, Plaintiff was never

appointed an Advisory Committee.

23.

During Plaintiff's DrPH studies at UGA, Dr. Brittani L. Harmon and Dr.

Stuart Feldman violated the governing policies regarding Advisory Committees for

DrPH students by refusing to appoint an Advisory Committee to Plaintiff and

instead relied on short-term improperly appointed Comprehensive Exam

Committees to administer Plaintiff's comprehensive exam course.

24.

During Plaintiff's DrPH studies at UGA, the improperly appointed

Comprehensive Exam Committee assigned to Plaintiff was chaired by Dr. Brittani

L. Harmon and its other members included Dr. Stuart Feldman, Dr. Dale Green,

and Dr. George Khalil.

25.

Dr. Brittani L. Harmon and Dr. Stuart Feldman enjoyed substantial if not

complete supervisory authority within UGA's DrPH program's chain of command

and the ability to institute corrective measures with regards to Plaintiff's

grievances brought within this Complaint.

*FACTS AS TO PLAINTIFF*

26.

Plaintiff is a Black male, and thus a member of a protected class.

27.

On or around July 30, 2015, Plaintiff was admitted to UGA's College of Public health (hereafter referred to as "CPH") as a doctoral student in the DrPH program.

28.

Since 2017, the DrPH program has been located at UGA's Gwinnett Campus.

29.

Plaintiff was the only Black male student in a cohort of three (3) students admitted into UGA CPH's DrPH program in 2015.

30.

Plaintiff was born in Sierra Leone, a country in West Africa, and holds dual citizenship from Sierra Leone, and since 2011, the United States.

31.

Plaintiff is non-native English speaker, though he can speak four (4) languages including English.

32.

In 2013, Plaintiff graduated from the Georgia Institute of Technology, School of Industrial and Systems Engineering (ISYE) with a Master of Science in

International Logistics and maintained a 3.9 GPA. This achievement was a major milestone in his "American Dream."

33.

On or around June 5, 2017, Plaintiff was also accepted to Georgia Southern University's Doctor of Public Health program.

34.

Plaintiff chose to matriculate to UGA because of UGA CPH's published commitment to provide a Doctoral Advisory Committee one year into a student's progression into the DrPH program that will support students towards successful completion of the doctoral program.

35.

Plaintiff's research interest is in healthcare supply chain management. His interest was inspired by Plaintiff's role as Logistics Coordinator working with the United Nations Humanitarian Assistance Coordination Unit, during the 10 years of bloody civil wars in his native country, Sierra Leone.

### A.   PLAINTIFF'S ACADEMIC PROGRESS AT UGA

36.

Prior to Plaintiff's dismissal, since his admission into the DrPH program, Plaintiff was a full-time student, never failed any class, never missed a semester, maintained a 3.43 GPA, and was in good academic standing. See Exhibit C, Page 1.

37.

Prior to Plaintiff's dismissal, except for the DrPH's comprehensive exam course and Plaintiff's doctoral dissertation and associated residency/graduate internship (13 credit hours), Plaintiff had taken and passed all the DrPH program's required courses and classes (58 credit hours).

38.

Prior to his dismissal, Plaintiff had already secured his placement in a graduate internship at the Center for Disease Control and Prevention (CDC).

39.

Additionally, Plaintiff was the only student among his 2015 cohort of three (3) students that attempted or successfully passed the Certified in Public Health professional certification in 2018 by the National Board of Public Health Examiners (NBPHE).

40.

Unlike other UGA administrators and professors that replied with words of congratulation to Plaintiff's email news informing them of his passing the Certified in Public Health professional certification, Dr. Stuart Feldman ignored Plaintiff's email.

41.

In the Fall of 2018, on or around October 12-19, 2018, Plaintiff attempted but was unsuccessful in passing his first attempt at the DrPH's comprehensive exam course.

42.

At that time, Plaintiff was given written feedback by grading faculty, Dr. George Khalil and Dr. Dale Green, on both assignment questions.

43.

Plaintiff also met with two faculty members regarding the two written assignment questions regarding his poor academic performance, though the comprehensive examination course rubric was never filled out for Plaintiff and Plaintiff was not graded according to a stipulated grading rubric, and only given a total evaluative statement of "Fail."

44.

Plaintiff's feedback on his first attempt of the comprehensive exam course consisted mainly of comments regarding Plaintiff's grammatical, spelling, and formatting mistakes.

45.

Naturally, as someone whose first language is not English, and though UGA never offered despite clearly seeing Plaintiff's need, Plaintiff had an understanding that UGA wanted him to enlist the help of a proofreader.

46.

According to the UGA CPH's 2019-2020 Student Handbook, any student that fails the comprehensive exam course twice will be automatically dismissed from the DrPH program by the department of Health Policy and Management or by the CPH. See Exhibit D, Page 9.

47.

In the Spring of 2019, on or around March 8-17, 2019, Plaintiff had his second attempt at the DrPH's comprehensive exam course.

48.

On or around March 17, 2019, Plaintiff submitted two separate assignment questions that comprised the entire written portion of his comprehensive examination course.

## B.   REPORTED PLAGIARISM

49.

On or around April 3, 2019, Plaintiff was notified by the UGA Academic Honesty and Student Appeals Office that the second of the two (2) submitted assignment questions of the written portion of Plaintiff's comprehensive exam course was flagged for possible plagiarism. See Exhibit E.

50.

Plaintiff had never been accused of any academic or disciplinary misconduct throughout his entire academic career until this incident on April 3, 2019.

51.

According to UGA's Academic Honesty Policy, "The forums used in academic honesty matters are intended to enhance educational opportunities while providing appropriate consequences when academic dishonesty occurs." See Exhibit F, Page 3.

52.

The procedures used by the Academic Honesty Policy are designed to "1)
protect the rights and interests of students and other members of the university
community, 2) guarantee fundamental fairness to all, and 3) ensure order." See
Exhibit F, Page 3.

## C.   FACILITATED DISCUSSION

53.

In accordance with UGA's process for handling matters related to academic
honesty, the Office of Academic Honesty scheduled a Facilitated Discussion for
Plaintiff, Dr. Brittani L. Harmon, and an appointed facilitator on or around April
18, 2019, in Athens, Georgia, to potentially attempt to reach an agreement about
the matter and, if dishonesty was involved, mutually agree to appropriate
consequences for the student, Plaintiff. See Exhibit F, Page 9.

54.

Plaintiff did not have any advocate, much less an effective advocate at this
time.

55.

Plaintiff was given no formal warning of his rights or the potentially academically fatal consequences that could result from the administrative proceeding that was beginning.

56.

During the Facilitated Discussion, on or around April 18, 2019, among Plaintiff, Dr. Brittani L. Harmon, and an appointed facilitator, Plaintiff showed evidence that the alleged plagiarism violation was due to an accidental submission of the wrong document, not his final draft, and that the correct document that Plaintiff intended to submit, his final draft, did not contain the alleged plagiarism violation.

57.

Plaintiff showed that the draft version of the answer for the second assignment question that was accidentally submitted contained one paragraph, out of the thirty-one (31) total pages he wrote to answer the second assignment question, that was deleted in the final version that Plaintiff intended to submit.

58.

Plaintiff showed that the final version of the answer for the second assignment question that he intended to submit did not contain the paragraph that was flagged for possible plagiarism.

59.

Plaintiff showed that both documents, the draft version that was accidentally submitted and the final version that Plaintiff intended to submit, were created before the date and time he submitted the answer for his comprehensive exam course's second assignment question.

60.

During the Facilitated Discussion, on or around April 18, 2019, between Plaintiff, Dr. Brittani L. Harmon, and an appointed facilitator, Dr. Brittani L. Harmon disclosed that Dr. Stuart Feldman and the Department HPAM had already made a predetermined dismissal decision, and that Plaintiff's admission to the accidental plagiarism should warrant an automatic dismissal from the DrPH program.

61.

During the Facilitated Discussion, on or around April 18, 2019, between Plaintiff, Dr. Brittani L. Harmon, and an appointed facilitator, no agreement was

reached because Dr. Brittani L. Harmon refused to negotiate any penalty or consequence short of Plaintiff accepting dismissal as the consequence of his accidental submission.

62.

On or around April 19,2019, Plaintiff sent an email to Dr. Stuart Feldman and Dr. Brittani L. Harmon where he expressed his concerns regarding the arbitrary or capricious decision to dismiss Plaintiff before the completion of UGA's hearing procedures for academic dishonesty.

63.

In Plaintiff's email to Dr. Stuart Feldman and Dr. Brittani L. Harmon on or around April 19, 2019, Plaintiff also requested to speak with the improperly appointed Comprehensive Exam Committee to reconsider the predetermined dismissal decision.

64.

On or around April 19, 2010, Dr. Stuart Feldman replied back to Plaintiff stating only, "there can be no discussion before the next hearing".

65.

Despite persistent requests, Plaintiff was refused audience by all CPH faculty and administrators in accordance with Dr. Stuart Feldman's official position that no one should speak with Plaintiff.

66.

Dr. Stuart Feldman was acting in a prosecutorial and adverse manner to Plaintiff, and no one else was advocating for Plaintiff or from his perspective.

D.   CONTINUED DISCUSSION

67.

In accordance with UGA's academic honesty policy, because no resolution was agreed upon between Plaintiff, Dr. Brittani L. Harmon, and an appointed facilitator, the allegations of possible plagiarism against Plaintiff were moved to a Continued Discussion. See Exhibit F, Page 10.

68.

A Continued Discussion is a hearing before the Academic Honesty Panel (hereafter referred to as "AHP").

69.

In accordance with UGA's academic honesty policy, the AHP, which is a jury of tenured or tenure-track faculty, and students, is appointed by the Office of the Vice President for Instruction, to discuss, consider, and to deliver sanctions on all matters related to students suspected of a violation of UGA's academic honesty policy. See Exhibit F, Pages 4.

70.

The AHP for allegations against a graduate student, such as Plaintiff, is made up of at least two graduate student panelists and at least one graduate faculty panelist. See Exhibit F, Pages 4.

71.

The AHP can only find a student has violated the academic honesty policy when a majority of the panelists believe that the instructor, bringing the allegation against the student, has demonstrated that it is more likely than not that a violation of the academic honesty policy has occurred. See Exhibit F, Page 11.

72.

Academic honesty and the principle of honesty in general has within it the premise of intentionality.  A person is not being dishonest when they are in error, because they were not intending to deceive.  Thus, as Plaintiff only admitted to an

unintentional error, which was perceived as plagiarism, no reasonable AHP could find it more likely than not that he violated the academic dishonesty policy.

73.

The AHP can only impose a consequence against a student when the majority of the panelists find the instructor, bringing the allegation of academic misconduct against the student, has demonstrated that it is more likely than not that a violation of the academic honesty policy has occurred. See Exhibit F, Page 11.

74.

Plaintiff received notice, dated April 25, 2019, that the hearing before the AHP (the Continued Discussion) was scheduled for May 3, 2019 to determine the outcome of the sole allegation of alleged plagiarism on his comprehensive exam course.

75.

According to UGA's Academic Honesty Policy, "When a Continued Discussion is scheduled [(a hearing in front of the AHP)], a written notice including a brief description of the alleged dishonesty, shall be delivered to the student, the instructor, and the Facilitator assigned by the Office of the Vice President for Instruction. The notice shall state the date, time and place of the meeting." See Exhibit F, Page 10.

76.

During the hearing on May 3, 2019, in Athens, Georgia, Plaintiff solely represented himself at the academic honesty policy hearing, while the instructor who reported the matter of possible plagiarism against Plaintiff, and who spoke against Plaintiff at the hearing, was Dr. Brittani L. Harmon.

77.

Plaintiff's understanding of the process was that the forums used were intended to enhance educational opportunities while providing appropriate consequences, that his rights and interests would be protected, that he would have a fair and impartial hearing, and that there would be guaranteed fundamental fairness to all.

78.

UGA's Academic Honesty Policy states that prior to any finding made regarding a student's alleged violation of the Academic Honesty Policy, the instructor shall permit the student to complete all required academic work and shall evaluate and grade all work except the assignment(s) involved in the accusation of dishonesty. See Exhibit F, Page 9.

79.

During Plaintiff's Continued Discussion, Dr. Brittani L. Harmon stated that she instructed the grading process on both written assignment questions of Plaintiff's comprehensive exam course halted immediately when one of the two assignment questions was flagged for alleged plagiarism, not just the assignment question that was flagged for alleged plagiarism, in violation of UGA's Academic Honesty Policy.

80.

During the hearing on May 3, 2019, Dr. Brittani L. Harmon stated that her department would respect the decision of the Academic Honesty Panel and welcome a speedy resolution on this "issue as timely as possible not only for the good of the program, but for the student as well."

81.

UGA's Academic Honesty Policy states that only the "instructor(s) who reported the matter have the right and responsibility to be present and to speak truthfully at the Continued Discussion." See Exhibit F, Page 10.

82.

UGA's Academic Honesty Policy states that only the instructor who reported the matter, the student believed to have violated the policy, the Facilitator,

and the AHP are participants allowed to make statements and ask questions during the Continued Discussion. See Exhibit F, Page 10.

83.

Despite UGA's policy, and despite only Dr. Brittani L. Harmon's name appearing on Plaintiff's confidential incident report as the name of the sole instructor reporting Plaintiff's alleged plagiarism, during the hearing on May 3, 2019, both Dr. Brittani L. Harmon and Dr. Stuart Feldman were allowed to act in a prosecutorial role against Plaintiff and spoke of Plaintiff's alleged plagiarism, in violation of UGA's Academic Honesty Policy.

84.

Despite UGA's policy, Dr. Stuart Feldman accompanied Dr. Brittani L. Harmon to Plaintiff's Continued Discussion; he made statements during Plaintiff's Continued Discussion; and he actively advocated for Plaintiff's dismissal during Plaintiff's Continued Discussion, in violation of UGA's Academic Honesty Policy.

85.

Despite not being an instructor who reported Plaintiff's alleged violation, Dr. Stuart Feldman attended and presented evidence at Plaintiff's Continued Discussion, in violation of UGA's Academic Honesty Policy.

86.

Despite not being an instructor who reported Plaintiff's alleged violation, Dr. Stuart Feldman, as the Interim Head of UGA's Department of HPAM and a professor emeritus, was allowed to make statements and influence the AHP at Plaintiff's Continued Discussion, in violation of UGA's Academic Honesty Policy.

87.

Even if Dr. Brittani L. Harmon considered Dr. Stuart Feldman to be her accompanying advisor during Plaintiff's Continued Discussion, according to UGA's Academic Honesty Policy, "The advisors may not address the panel or other parties in attendance." See Exhibit F, Page 10.

88.

Dr. Stuart Feldman did in fact address the panel and the other parties at Plaintiff's Continued Discussion, in violation of UGA's Academic Honesty Policy.

89.

During the hearing on May 3, 2019, both Dr. Brittani L. Harmon and Dr. Stuart Feldman advocated for Plaintiff to be found in violation of UGA's academic honesty policy.

90.

During the hearing on May 3, 2019, both Dr. Brittani L. Harmon and Dr. Stuart Feldman advocated for Plaintiff's automatic dismissal, in part because of the CPH's DrPH automatic dismissal policy for failing two attempts of the comprehensive exam course.

91.

During the hearing on May 3, 2019, Plaintiff showed evidence that the alleged plagiarism that was flagged was due to an accidental submission of the wrong document, and that the correct document that Plaintiff intended to submit did not contain the alleged plagiarism that was flagged.

92.

The document submitted was not a document that could not have been cured of the alleged properties of plagiarism it was said to contain, which were isolated, de minimus, and did not constitute the bulk of the work.

93.

Quite the contrary, this issue regards a single passage or citation, depending on how the analysis is performed, and proper attribution could have been added, or words could have been rephrased such as not to be plagiarism.

E.   AHP'S DECISION AT PLAINTIFF'S CONTINUED DISCUSSION

94.

On May 3, 2019, though the AHP understood that Plaintiff's plagiarism was unintentional, the AHP found Plaintiff in violation of plagiarism policies.

95.

On May 3, 2019, at the behest of Dr. Stuart Feldman and Dr. Brittani L. Harmon, the AHP also found Plaintiff in violation of unauthorized assistance.

96.

On May 3, 2019, the AHP found Plaintiff in violation of unauthorized assistance despite the hearing being solely about alleged plagiarism.

97.

On May 3, 2019, the AHP found Plaintiff in violation of unauthorized assistance despite Plaintiff's notice only containing the sole charge of possible plagiarism.

98.

UGA's Academic Honesty Policy states that if the AHP determines that a subsequent violation occurred, the Multiple Violations Review Board will be convened to meet with the student and the Director for Academic Honesty to

determine additional consequences for the multiple violations. See Exhibit F, Page 11.

99.

The AHP found Plaintiff in violation of a subsequent violation, unauthorized assistance, during Plaintiff's hearing solely about possible plagiarism, and yet UGA did not follow its policy of having the Multiple Violations Review Board convene to determine additional consequences for the multiple violations, and instead lumped all the consequences for unintentional plagiarism and unauthorized assistance, for which Plaintiff received no notice, together during the Continued Discussion, in violation of UGA's Academic Honesty Policy.

100.

Plaintiff's additional charge of unauthorized notice, of which Plaintiff had no notice nor any opportunity to prepare a defense, has prejudiced Plaintiff and his appeal proceedings.

101.

On May 3, 2019, the AHP did not follow Dr. Stuart Feldman and Dr. Brittani L. Harmon's advocacy for Plaintiff's dismissal. Instead, the AHP recommended a "zero grade" on the assignment and "NONE" as additional consequences. See Exhibit G, Page 2.

29

102.

UGA's Academic Honesty Policy states that, "If the Academic Honesty Panel finds that extraordinary circumstances warrant the imposition of a consequence less than the minimums . . . the Academic Honesty Panel shall state in writing the reasons for the extraordinary circumstances and why the assigned consequence is considered appropriate." See Exhibit F, Pages 13-14.

103.

The AHP found extraordinary circumstances in Plaintiff's case of alleged plagiarism, which warranted the imposition of a consequence less than the minimums outlined in UGA's Academic Honesty Policy of consequences that must be assigned to a student found in violation by the AHP (See Exhibit F, Pages 13-14), and yet the AHP failed to state the reasons for the extraordinary circumstances and why the assigned consequence of "NONE" was considered appropriate, in violation of UGA's Academic Honesty Policy.

104.

The AHP did not find Plaintiff's actions warranting a "Final course grade of F," instead the AHP recommended a "zero grade" on the assignment question that was flagged for plagiarism. See Exhibit F, Pages 13-14 and Exhibit G, Page 2.

F.   UGA'S DISMISSAL OF PLAINTIFF

105.

After receiving the AHP's decision for Plaintiff to receive a zero on the assignment question that had inadvertent misattribution, Plaintiff requested to speak with his improperly appointed Comprehensive Exam Committee in charge of grading Plaintiff's exam.

106.

Plaintiff's request to speak with the improperly appointed Comprehensive Exam Committee in charge of grading Plaintiff's exam was dismissed and denied by Dr. Stuart Feldman.

107.

On May 6, 2019, not even a full workday after the AHP's decision on May 3, 2019, Dr. Brittani L. Harmon issued Plaintiff a dismissal letter that stated Plaintiff's dismissal was based upon the recommendation of the Health Policy and Management Department of the CPH, with no opportunity provided to Plaintiff to be heard at a meaningful time and in a meaningful manner. See Exhibit H.

108.

Despite Dr. Brittani L. Harmon and Dr. Stuart Feldman failing to secure their sought after dismissal of Plaintiff at the Continued Discussion in front of the

AHP on May 3, 2019, they arbitrarily extrapolated the "zero grade" on the assignment question of Plaintiff's comprehensive exam course to a "Final course grade of F" for Plaintiff's comprehensive exam course, without grading the assignment question that was not flagged for plagiarism, and arbitrarily extrapolated further to Plaintiff's automatic academic dismissal via departmental policy.

109.

Despite UGA's Academic Honesty Policy stating a student's appeal of a decision made by the AHP must be "delivered to the Office of the President of the university within five (5) days following the date of delivery to the student of the final decision by the Academic Honesty Panel or the Multiple Violations Review Board" (See Exhibit F, Page 13), Plaintiff was dismissed before he could review and even have an opportunity to appeal the AHP's decision.

110.

Despite UGA's Academic Honesty Policy stating prior to any finding made regarding a student's alleged violation of the Academic Honesty Policy, the instructor shall permit the student to complete all required academic work and shall evaluate and grade all work except the assignment(s) involved in the accusation of dishonesty (See Exhibit F, Page 9), Plaintiff's first assignment question of his

comprehensive exam course, that was never flagged for any alleged plagiarism, was never graded, in violation of UGA's Academic Honesty Policy.

111.

Plaintiff's DrPH comprehensive exam course is made up of multiple assignment questions, was graded on a Pass/Fail scale, and a "zero grade" on one assignment question in no way could have justly warranted an automatic failure of the comprehensive exam course without grading the other assignment questions.

112.

According to UGA policy manuals, Dr. Stuart Feldman and Dr. Brittani L. Harmon had no administrative authority to dismiss Plaintiff as a student from the DrPH program.

113.

From May 3, 2019, a Friday, to May 6, 2019, a Monday, no recommendation from the Department of HPAM was ever obtained by Dr. Brittani L. Harmon and Dr. Stuart Feldman.

114.

There was a rush to judgment and the timing of these two events is a strong indicator that the decision was not only arbitrary or capricious but decided beforehand, if a recommendation of the Department of HPAM was even sought to

begin with, in total disregard of any honest and meaningful due process for Plaintiff. The decision was not an academic decision.

115.

The decision of assigning Plaintiff's failing grade for his second attempt of the comprehensive exam course was not made by Plaintiff's never appointed Advisory Committee.

116.

Plaintiff's never appointed Advisory Committee did not convene after the AHP's decision on May 3, 2019, and prior to Plaintiff's dismissal on May 6, 2019, to grade and assign Plaintiff a failing grade on his second attempt at the comprehensive exam course.

117.

Plaintiff's failing grade on his second attempt at the comprehensive exam course was assigned by Dr. Brittani L. Harmon and Dr. Stuart Feldman outside of proper procedure.

118.

The Steering Committee was not convened to discuss Plaintiff's assigned failing grade on his second attempt at the comprehensive exam course or Dr. Brittani L. Harmon and Dr. Stuart Feldman's decision to dismiss Plaintiff.

119.

Dr. Stuart Feldman and Dr. Brittani L. Harmon reached a biased and discriminatory decision as they acted simultaneously as prosecutors and judges during the entirety of Taylor's dismissal proceedings at the AHP level and at the departmental level.

120.

Plaintiff's comprehensive exam course was to be graded by his never assigned Advisory Committee, but never was.

121.

Dr. Stuart Feldman and Dr. Brittani L. Harmon arbitrarily and capriciously ignored and overrode the two committees, that is, the never appointed Advisory Committee and a Steering Committee, in their decision to assign a failing grade to Plaintiff's second attempt at the comprehensive exam course and dismiss Plaintiff from the DrPH program.

122.

Dr. Stuart Feldman and Dr. Brittani L. Harmon, and not Plaintiff's never appointed Advisory Committee, arbitrarily and capriciously chose to assign Plaintiff a failing grade on his second attempt of the comprehensive exam course.

123.

Dr. Stuart Feldman and Dr. Brittani L. Harmon arbitrarily and capriciously assigned Plaintiff a failing grade on his second attempt of the comprehensive exam course based on biased administrative decision making, and not based on faculty evaluation of his academic coursework.

124.

Plaintiff's comprehensive exam course was never graded despite Dr. Stuart Feldman and Dr. Brittani L. Harmon arbitrarily and capriciously assigning Plaintiff a failing grade, and Plaintiff was only ever notified of his failure of the comprehensive exam course by the dismissal letter he received from Dr. Brittani L. Harmon.

G.   PLAINTIFF'S APPEAL OF UGA'S DISMISSAL

125.

Dr. Stuart Feldman and Dr. Brittani L. Harmon were present at Plaintiff's first appeal held by the CPH Curriculum and Academic Program Committee and at the Education Affairs Committee.

126.

During every step of the appeal process, Dr. Stuart Feldman and Dr. Brittani L. Harmon used their authority and influence to cause damage to Plaintiff and to ensure that their arbitrary or capricious decision was sustained.

127.

In his review of all UGA policies and procedures, Plaintiff was confident that a fair and unbiased hearing would result in him being able to complete the program, dissertate, graduate and receive his doctoral degree, and obtain appropriate employment and remuneration in his chosen field.

128.

All of Plaintiff's appeals of his dismissal have been denied.

## H.   OTHER POLICY VIOLATIONS AND ADDITIONAL FACTS

129.

In the 2019 Spring Semester, Plaintiff was among six (6) similarly situated doctoral students, from different UGA colleges and graduate programs, that were referred to UGA's Office of Academic Honesty and Integrity for alleged plagiarism violations of UGA's Academic Honesty Policy.

130.

On information and belief, Plaintiff was the only Black student of these six (6) doctoral students.

131.

All six (6) of the similarly situated doctoral students, including Plaintiff, admitted responsibility for plagiarism, as plagiarism is any intentional or unintentional submission of material facts that violates the academic honesty policy.

132.

Plaintiff's was the only instance where a doctoral student's alleged plagiarism violation was not resolved at the Facilitated Discussion stage, because Plaintiff was a Black doctoral student.

133.

 Despite UGA's Academic Honesty Policy stating, "The forums used in academic honesty matters are intended to enhance educational opportunities while providing appropriate consequences when academic dishonesty occurs" (See Exhibit F, Page 3), Plaintiff's alleged academic dishonesty was not resolved at the Facilitated Discussion stage because Dr. Brittani L. Harmon, as instructed by Dr. Stuart Feldman, would not negotiate an appropriate consequence to Plaintiff's

inadvertent citation error (by his submission of the wrong document) of anything less than Plaintiff's arbitrary, capricious, and shocking dismissal from the DrPH program.

134.

As previously stated, the AHP found extraordinary circumstances in Plaintiff's case of inadvertent "plagiarism" (by his submission of the wrong document) that warranted the imposition of a consequence less than the minimums outlined in UGA's Academic Honesty Policy, and yet Dr. Brittani L. Harmon, as instructed by Dr. Stuart Feldman, would not accept anything less than Plaintiff's arbitrary, capricious, and shocking dismissal from the DrPH program.

135.

Unlike Plaintiff, a Black doctoral student, none of the other five (5) similarly situated doctoral students that truthfully admitted responsibility for plagiarism were dismissed from UGA.

136.

Throughout Plaintiff's doctoral studies at UGA, he repeatedly requested, as per UGA's written policies, that he be appointed an Advisory Committee after his first year of doctoral studies. See Exhibit A.

137.

No Advisory Committee was ever appointed to Plaintiff, in violation of UGA's written policies.

138.

According to UGA's written policies, whether a student passes or fails their comprehensive exam course is decided by the written votes of the student's Advisory Committee, with no more than one dissenting vote allowed in passing a student. See Exhibit A and Exhibit B.

139.

Plaintiff was never assigned an Advisory Committee during Plaintiff's doctoral studies at UGA, in violation of UGA's policies, thus, according to UGA's written policies, it is impossible that Plaintiff could have failed his second attempt at the comprehensive exam course, let alone Plaintiff's first attempt at the comprehensive exam course, because no Advisory Committee was assigned to Plaintiff to even vote on whether to pass or fail Plaintiff.

140.

On information and belief, of the three (3) students admitted into UGA CPH's DrPH program in 2015, Plaintiff, a Black male, and the second student, an

African-American female were both denied an Advisory Committee, while the third student, a white female, was granted an Advisory Committee.

141.

Dr. Brittani L. Harmon and Dr. Stuart Feldman violated their own policies regarding Advisory Committees for DrPH students, without ever changing the written policies of the DrPH program until after Plaintiff repeatedly brought this up during his appeals after he was dismissed from the DrPH program.

142.

Dr. Brittani L. Harmon and Dr. Stuart Feldman violated their own policies regarding Advisory Committees for DrPH students by refusing to appoint an Advisory Committee to Plaintiff and instead relied on short-term, improperly appointed Comprehensive Exam Committees to administer Plaintiff's comprehensive exam course.

143.

In Dr. Brittani L. Harmon and Dr. Stuart Feldman's haste to change the DrPH program's policies after Plaintiff's dismissal, the new policy regarding Advisory Committees for DrPH students states that, "Upon successful completion of the doctoral comprehensive examination and core coursework and upon recommendation of the departmental graduate coordinator, the dean of the

41

Graduate School shall appoint an advisory committee for the Doctor of Public Health candidate." See Exhibit I, Pages 1-2.

144.

In Dr. Brittani L. Harmon and Dr. Stuart Feldman's haste to change the DrPH program's policies after Plaintiff's dismissal, the DrPH Comprehensive Examination policy is the same as when Plaintiff was a student and states, "Following each [comprehensive] examination, written and oral, each member of the advisory committee will cast a written vote of pass or fail on the examination." See Exhibit B.

145.

Thus, Dr. Brittani L. Harmon and Dr. Stuart Feldman have hastily enacted policies that are opposed to one another: a student's Advisory Committee is appointed after a student completes the comprehensive exam course, but a student's comprehensive exam course is graded by their Advisory Committee. See Exhibit B and Exhibit I.

146.

Thus, Dr. Brittani L. Harmon and Dr. Stuart Feldman have hastily enacted DrPH program policies that are opposed to one another in an attempt to hide their culpability.

42

147.

According to UGA's Office of the Registrar's Attempted Courses Policy,

"All courses attempted by a student will be included on the student's

transcript . . . ." See Exhibit C, Page 2.

148.

Despite UGA's Attempted Course Policy, Plaintiff's transcript does not

include either his first or second attempt of the comprehensive exam course.

149.

The credits Plaintiff has earned at UGA's DrPH program are non-

transferrable to other DrPH programs at different educational institutions, thus

Plaintiff would have to completely start over his DrPH studies at a different

educational institution.

150.

Plaintiff has suffered economic injury due to UGA's actions with Plaintiff

having taken out loans to attend UGA for four (4) years in the amount of $72,900.

151.

Plaintiff has had to hire counsel and currently has over $42,584 in attorney's

fees on account.

*COUNT I - VIOLATION OF PROCEDURAL DUE PROCESS § 1983*

152.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 151.

153.

The basic requirements of procedural due process are that there must be notice and a meaningful opportunity to be heard.

154.

Plaintiff has a right to continue his post-secondary education.

155.

Impartiality is the essence of fair judicial treatment, and fairness is the essence of impartial judicial treatment.

156.

Plaintiff's liberty includes his good name, reputation, honor, or integrity.

157.

Liberty has a substantive aspect which invests each person with a protected interest in acquisition and conveyance of knowledge.

158.

For UGA to take Plaintiff's liberty away requires due process of the law.

159.

Plaintiff's property interest in continued enrollment at UGA, a state school, is an important entitlement protected by the Due Process Clause of the Fourteenth Amendment.

160.

Plaintiff has a property interest to continue his doctoral studies at UGA, a state school, and for UGA to deny this requires due process of the law.

161.

For UGA to take away substantive liberty or a property interest from Plaintiff requires procedural due process.

162.

During Plaintiff's Facilitated Discussion, on or around April 18, 2019, Plaintiff was informed by Dr. Brittani L. Harmon that Dr. Stuart Feldman and the Department of HPAM had already consciously, willfully, and intentionally made a predetermined dismissal decision, and that Plaintiff's admission to the accidental "plagiarism" should warrant an automatic dismissal from the DrPH program.

163.

Thus, Plaintiff's punishment had already been predetermined and decided prior to Plaintiff's academic hearings, in violation of Plaintiff's due process rights.

164.

UGA's Academic Honesty Policy states that, "When a Continued Discussion is scheduled [(a hearing in front of the AHP)], a written notice including a brief description of the alleged dishonesty, shall be delivered to the student, the instructor, and the Facilitator assigned by the Office of the Vice President for Instruction. The notice shall state the date, time and place of meeting." See Exhibit F, Page 10.

165.

On May 3, 2019, the AHP found Plaintiff in violation of unauthorized assistance despite the hearing being solely about alleged plagiarism. See Exhibit E and Exhibit G.

166.

On May 3, 2019, the AHP found Plaintiff in violation of unauthorized assistance despite Plaintiff's notice only containing the sole charge of possible plagiarism. See Exhibit E and Exhibit G.

167.

Despite Plaintiff's notice containing the sole alleged dishonesty as being plagiarism, the AHP found Plaintiff in violation of unauthorized assistance during Plaintiff's Continued Discussion, in violation of UGA's Academic Honesty Policy.

168.

Plaintiff never received notice of nor had a meaningful opportunity to be heard for one of the academic honesty policy violations he was found to have committed, i.e. unauthorized assistance, during his Continued Discussion (Plaintiff's hearing in front of the AHP).

169.

Now when applying to study at other educational institutions, Plaintiff will be prejudiced by inquires that call for the disclosure that he was found in violation of unauthorized assistance, a charge for which UGA never provided Plaintiff notice.

170.

UGA's Academic Honesty Policy states that if the AHP determines that a subsequent violation occurred, the Multiple Violations Review Board will be convened to meet with the student and the Director for Academic Honesty to determine additional consequences for the multiple violations. See Exhibit F, Page 11.

171.

The AHP found Plaintiff in violation of a subsequent violation, unauthorized assistance, and yet UGA did not follow its policy of having the Multiple Violations

Review Board convene to determine additional consequences for the multiple

violations, and instead lumped all the consequences for unintentional plagiarism

and unauthorized assistance, for which Plaintiff received no notice, together during

the Continued Discussion, in violation of UGA's Academic Honesty Policy.

172.

UGA's Academic Honesty Policy states that only the "instructor(s) who

reported the matter have the right and responsibility to be present and to speak

truthfully at the Continued Discussion." See Exhibit F, Page 10.

173.

UGA's Academic Honesty Policy states that only the instructor who

reported the matter, the student believed to have violated the policy, the Facilitator,

and the AHP are the only participants allowed to make statements and ask

questions during the Continued Discussion. See Exhibit F, Page 10.

174.

Despite UGA's policy, and despite only Dr. Brittani L. Harmon's name

appearing on Plaintiff's confidential incident report as the name of the sole

instructor reporting Plaintiff's alleged plagiarism, during the hearing on May 3,

2019, both Dr. Brittani L. Harmon and Dr. Stuart Feldman were allowed to act in a

prosecutorial role against Plaintiff and spoke of Plaintiff's alleged plagiarism, in violation of UGA's Academic Honesty Policy.

175.

Despite UGA's policy, Dr. Stuart Feldman accompanied Dr. Brittani L. Harmon to Plaintiff's Continued Discussion, Dr. Stuart Feldman made statements during Plaintiff's Continued Discussion, and Dr. Stuart Feldman actively advocated for Plaintiff's dismissal during Plaintiff's Continued Discussion, in violation of UGA's Academic Honesty Policy.

176.

Despite not being an instructor who reported Plaintiff's alleged violation, Dr. Stuart Feldman attended and presented evidence at Plaintiff's Continued Discussion, in violation UGA's Academic Honesty Policy.

177.

Despite not being an instructor who reported Plaintiff's alleged violation, Dr. Stuart Feldman, as the Interim Head of UGA's Department of HPAM and a professor emeritus, was allowed to make statements and influence the AHP at Plaintiff's Continued Discussion, in violation of UGA's Academic Honesty Policy.

178.

Even if Dr. Brittani L. Harmon considered Dr. Stuart Feldman to be her accompanying advisor during Plaintiff's Continued Discussion, according to UGA's Academic Honesty Policy, "The advisors may not address the panel or other parties in attendance." See Exhibit F, Page 10.

179.

Dr. Stuart Feldman did in fact address the panel and the other parties at Plaintiff's Continued Discussion, in violation of UGA's Academic Honesty Policy.

180.

Plaintiff never received notice nor had a meaningful opportunity to be heard prior to his arbitrary, capricious, or conscience shocking improper disciplinary dismissal by Dr. Brittani L. Harmon and Dr. Stuart Feldman, disguised as an academic dismissal based on policy.

181.

Despite Dr. Brittani L. Harmon and Dr. Stuart Feldman advocating that the AHP assign Plaintiff a final course grade of "F" on his comprehensive exam course and his dismissal, the AHP only ruled that Plaintiff was to receive a zero on the assignment question where the inadvertent "plagiarism" was found.

182.

Despite Dr. Brittani L. Harmon and Dr. Stuart Feldman failing to secure their sought after dismissal of Plaintiff at the AHP on May 3, 2019, they arbitrarily extrapolated the "zero grade" on the assignment question of Plaintiff's comprehensive exam course to a "Final course grade of F" for Plaintiff's comprehensive exam course, and arbitrarily extrapolated further to Plaintiff's automatic academic dismissal via departmental policy.

183.

Plaintiff's DrPH comprehensive exam course is made up of multiple assignment questions, was graded on a Pass/Fail scale, and a "zero grade" on one assignment question in no way could have justly warranted an automatic failure of the comprehensive exam course without grading the other questions, especially since the assigning of a passing or failing grade was to be made by Plaintiff's Advisory Committee, which was never appointed to Plaintiff to begin with.

184.

Plaintiff was dismissed from UGA within a full workday after the AHP's decision and before Plaintiff had a meaningful opportunity to file his appeal of the AHP's decision that was due within five (5) days of the AHP's decision. See Exhibit F, Pages 12-13.

185.

Plaintiff's dismissal from UGA was clearly arbitrary, capricious, or conscience shocking.

186.

UGA's meted out punishment of Plaintiff's inadvertent "plagiarism" and unauthorized assistance, of which Plaintiff received no notice, was excessive.

187.

UGA failed to exercise professional judgment such that their decision is not entitled to a heightened deference.

188.

Plaintiff's dismissal was not an academic decision.

189.

Plaintiff's dismissal was motivated by bad faith or ill will.

190.

The actions of all agents and employees of UGA alleged herein were in furtherance of and within the scope of UGA's business.

191.

Plaintiff has suffered economic injury due to UGAs willful and arbitrary violation of Plaintiff's rights.

192.

UGA's actions resulted in an "academic death penalty" against Plaintiff.

193.

As a result of UGA's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

194.

As a result of UGA's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

195.

Plaintiff has suffered economic injury due to UGAs willful and arbitrary denial of due process with Plaintiff having taken out loans to attend UGA for four (4) years in the amount of $72,900.

*COUNT II - VIOLATION OF SUBSTANTIVE DUE PROCESS § 1983*

196.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 151.

197.

The substantive due process doctrine prevents the government from engaging in conduct that is arbitrary, capricious, or conscience shocking.

198.

Plaintiff has a right to continue his post-secondary education.

199.

Impartiality is the essence of fair judicial treatment, and fairness is the essence of impartial judicial treatment.

200.

Plaintiff's liberty includes his good name, reputation, honor, or integrity.

201.

For UGA to take Plaintiff's liberty away requires due process of the law.

202.

Liberty has a substantive aspect which invests each person with a protected interest in acquisition and conveyance of knowledge.

203.

Plaintiff's property interest in continued enrollment at UGA, a state school, is an important entitlement protected by the Due Process Clause of the Fourteenth Amendment.

204.

Plaintiff has a property interest to continue his doctoral studies at UGA, a state school, and for UGA to deny this requires due process of the law.

205.

During Plaintiff's Facilitated Discussion, on or around April 18, 2019, Plaintiff was informed by Dr. Brittani L. Harmon that Dr. Stuart Feldman and the Department of HPAM had already made a dismissal decision, and that Plaintiff's admission to the accidental "plagiarism" should warrant an automatic dismissal from the DrPH program.

206.

Thus, Plaintiff's punishment had already been decided prior to Plaintiff's academic hearings. In other words Plaintiff's punishment preceded Plaintiff's hearing, in violation of Plaintiff's due process rights.

207.

UGA's Academic Honesty Policy states that, "When a Continued Discussion is scheduled [(a hearing in front of the AHP)], a written notice including a brief description of the alleged dishonesty, shall be delivered to the student, the instructor, and the Facilitator assigned by the Office of the Vice

President for Instruction. The notice shall state the date, time and place of meeting." See Exhibit F, Page 10.

208.

On May 3, 2019, the AHP found Plaintiff in violation of unauthorized assistance despite the hearing being solely about alleged plagiarism. See Exhibit E and Exhibit G.

209.

On May 3, 2019, the AHP found Plaintiff in violation of unauthorized assistance despite Plaintiff's notice only containing the sole charge of possible plagiarism. See Exhibit E and Exhibit G.

210.

Despite Plaintiff's notice containing the sole alleged dishonesty as being plagiarism, the AHP found Plaintiff in violation of unauthorized assistance during Plaintiff's Continued Discussion, in violation of UGA's Academic Honesty Policy with Plaintiff.

211.

Plaintiff never received notice of nor had a meaningful opportunity to be heard for one of the academic honesty policy violations he was found to have

committed, unauthorized assistance, during his Continued Discussion (Plaintiff's hearing in front of the AHP).

212.

Now when applying to study at other educational institutions, Plaintiff will be prejudiced by requests calling for disclosure that he was found in violation of unauthorized assistance, a charge for which UGA never provided Plaintiff notice.

213.

UGA's Academic Honesty Policy states that if the AHP determines that a subsequent violation occurred, the Multiple Violations Review Board will be convened to meet with the student and the Director for Academic Honesty to determine additional consequences for the multiple violations. See Exhibit F, Page 11.

214.

The AHP found Plaintiff in violation of a subsequent violation, unauthorized assistance, and yet UGA did not follow its policy of having the Multiple Violations Review Board convene to determine additional consequences for the multiple violations, and instead lumped all the consequences for unintentional "plagiarism" and unauthorized assistance, of which Plaintiff received no notice, together during

the Continued Discussion, in violation of UGA's Academic Honesty Policy with Plaintiff.

215.

UGA's Academic Honesty Policy states that only the "instructor(s) who reported the matter have the right and responsibility to be present and to speak truthfully at the Continued Discussion." See Exhibit F, Page 10.

216.

UGA's Academic Honesty Policy states that the instructor who reported the matter, the student believed to have violated the policy, the Facilitator, and the AHP are the only participants allowed to make statements and ask questions during the Continued Discussion. See Exhibit F, Page 10.

217.

Despite UGA's policy, and despite only Dr. Brittani L. Harmon's name appearing on Plaintiff's confidential incident report as the name of the sole instructor reporting Plaintiff's alleged plagiarism, during the hearing on May 3, 2019, both Dr. Brittani L. Harmon and Dr. Stuart Feldman were allowed to act in a prosecutorial role against Plaintiff and spoke of Plaintiff's alleged plagiarism, in violation of UGA's Academic Honesty Policy.

218.

Despite UGA's policy, Dr. Stuart Feldman accompanied Dr. Brittani L.

Harmon to Plaintiff's Continued Discussion, Dr. Stuart Feldman made statements

during Plaintiff's Continued Discussion, and Dr. Stuart Feldman actively

advocated for Plaintiff's dismissal during Plaintiff's Continued Discussion, in

violation of UGA's Academic Honesty Policy.

219.

Despite not being an instructor who reported Plaintiff's alleged violation,

Dr. Stuart Feldman attended and presented evidence at Plaintiff's Continued

Discussion, in violation UGA's Academic Honesty Policy.

220.

Despite not being an instructor who reported Plaintiff's alleged violation,

Dr. Stuart Feldman, as the Interim Head of UGA's Department of HPAM and a

professor emeritus, was allowed to make statements and influence the AHP at

Plaintiff's Continued Discussion, in violation of UGA's Academic Honesty Policy.

221.

Even if Dr. Brittani L. Harmon considered Dr. Stuart Feldman to be her

accompanying advisor during Plaintiff's Continued Discussion, according to

UGA's Academic Honesty Policy, "The advisors may not address the panel or other parties in attendance." See Exhibit F, Page 10.

222.

Dr. Stuart Feldman did in fact address the panel and the other parties at Plaintiff's Continued Discussion, in violation of UGA's Academic Honesty Policy.

223.

UGA's Academic Honesty Policy states that, "If the Academic Honesty Panel finds that extraordinary circumstances warrant the imposition of a consequence less than the minimums . . . the Academic Honesty Panel shall state in writing the reasons for the extraordinary circumstances and why the assigned consequence is considered appropriate." See Exhibit F, Pages 13-14.

224.

The AHP found extraordinary circumstances in Plaintiff's case of alleged plagiarism, that warranted the imposition of a consequence less than the minimums outlined in UGA's Academic Honesty Policy, and yet the AHP failed to state the reasons for the extraordinary circumstances and why the assigned consequence of "NONE" was considered appropriate, in violation of UGA's Academic Honesty Policy.

225.

UGA's Academic Honesty Policy states that prior to any finding made regarding a student's alleged violation of the Academic Honesty Policy, the instructor shall permit the student to complete all required academic work and shall evaluate and grade all work except the assignment(s) involved in the accusation of dishonesty. See Exhibit F, Page 9.

226.

During Plaintiff's Continued Discussion, Dr. Brittani L. Harmon stated that she instructed the grading process on both written assignment questions of Plaintiff's comprehensive exam course to be halted immediately when one of the two assignment questions was flagged for alleged plagiarism, not just the assignment question that was flagged for alleged plagiarism, in violation of UGA's Academic Honesty Policy.

227.

Despite UGA's Academic Honesty Policy stating prior to any finding made regarding a student's alleged violation of the Academic Honesty Policy, the instructor shall permit the student to complete all required academic work and shall evaluate and grade all work except the assignment(s) involved in the accusation of dishonesty (See Exhibit F, Page 9), Plaintiff's first assignment question of his

comprehensive exam course, which was never flagged for any alleged plagiarism, was never graded, in violation of UGA's Academic Honesty Policy.

228.

Plaintiff's DrPH comprehensive exam course is made up of multiple assignment questions, was graded on a Pass/Fail scale, and a "zero grade" on one assignment question in no way could have justly warranted an automatic failure of the comprehensive exam course without grading the other assignment questions.

229.

UGA's policy dictates that Plaintiff's other assignment question in his comprehensive exam course was to be graded, but Plaintiff's other assignment question in his comprehensive exam course was not graded at all. In failing to grade the first question, UGA violated its own Academic Honesty Policy.

230.

Further, throughout Plaintiff's doctoral studies at UGA, he repeatedly requested, as per UGA's written policies, that he be appointed an Advisory Committee after his first year of doctoral studies. See Exhibit A.

231.

No Advisory Committee was ever appointed to Plaintiff, in violation of UGA's written policies with Plaintiff.

232.

According to UGA's written policies, whether a student passes or fails their comprehensive exam course is decided by the written votes of the student's Advisory Committee, with no more than one dissenting vote allowed in passing a student. See Exhibit B.

233.

Plaintiff was never assigned an Advisory Committee during Plaintiff's doctoral studies at UGA, in violation of UGA's policies with Plaintiff, thus, according to UGA's written policies, it is impossible that Plaintiff could have failed his second attempt at the comprehensive exam course, let alone Plaintiff's first attempt at the comprehensive exam course, because no Advisory Committee was assigned to Plaintiff to even vote on whether to pass or fail Plaintiff.

234.

Despite Dr. Brittani L. Harmon and Dr. Stuart Feldman advocating that the AHP assign Plaintiff a final course grade of "F" on his entire comprehensive exam course and Plaintiff's dismissal, the AHP only ruled that Plaintiff was to receive a zero on the assignment question where the inadvertent plagiarism was found.

235.

Despite Dr. Brittani L. Harmon and Dr. Stuart Feldman failing to secure their sought after dismissal of Plaintiff at the AHP on May 3, 2019, they administratively and arbitrarily extrapolated the "zero grade" on the assignment question of Plaintiff's comprehensive exam course to a "Final course grade of F" for Plaintiff's comprehensive exam course, and arbitrarily extrapolated further to Plaintiff's automatic academic dismissal via departmental policy.

236.

Plaintiff's DrPH comprehensive exam course is made up of multiple assignment questions, was graded on a Pass/Fail scale, and a "zero grade" on one assignment question in no way could have justly warranted an automatic failure of the comprehensive exam course without grading the other questions, especially since the assigning of a passing or failing grade was to be made by Plaintiff's Advisory Committee, which was never appointed to Plaintiff to begin with.

237.

Plaintiff was dismissed from UGA within a full workday after the AHP's decision and before Plaintiff had an opportunity to file his appeal of the AHP's decision that was due within five (5) days of the AHP's decision. See Exhibit F, Pages 12-13.

238.

Plaintiff's dismissal from UGA was clearly arbitrary, capricious, or conscience shocking.

239.

UGA's meted out punishment of Plaintiff's inadvertent plagiarism and unauthorized assistance, of which Plaintiff received no notice, was excessive.

240.

UGA failed to exercise professional judgment such that their decision is not entitled to a heightened deference.

241.

Plaintiff's dismissal was not an academic decision.

242.

Plaintiff's dismissal was motivated by bad faith or ill will.

243.

The actions of all agents and employees of UGA alleged herein were in furtherance of and within the scope of UGA's business.

244.

Plaintiff has suffered economic injury due to UGAs willful and arbitrary violation of Plaintiff's rights.

245.

UGA's actions resulted in an "academic death penalty" against Plaintiff.

246.

As a result of UGA's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

247.

As a result of UGA's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

248.

Plaintiff has suffered economic injury due to UGAs willful and arbitrary denial of due process with Plaintiff having taken out loans to attend UGA for four (4) years in the amount of $72,900.

*COUNT III - RACE AND NATIONAL ORIGIN DISCRIMINATION 42 U.S.C. § 2000d*

249.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 151.

250.

This race and national origin discrimination action is brought pursuant to Title VI of the Civil Rights Act of 1964, as amended.

251.

Plaintiff is Black, and thus a member of a protected class.

252.

Plaintiff was the only Black male student in a cohort of three (3) students admitted into UGA CPH's DrPH program in 2015.

253.

Plaintiff chose to matriculate to UGA because of UGA CPH's published commitment to provide a Doctoral Advisory Committee one year into a student's progression into the DrPH program that will support students towards successful completion of the doctoral program.

254.

The DrPH Advisory Committee is appointed to a student after their first year of residence in the DrPH program and,

> "The advisory committee, in consultation with the student, is charged with planning the student's program of study. It is also charged with approving the program of study, arranging the comprehensive written and oral examinations, approving a subject for the dissertation, approving the completed dissertation, and approving the student's defense of his or her

research. The committee should advise the student of required research skills and other requirements." See Exhibit A.

255.

Throughout Plaintiff's doctoral studies at UGA, he repeatedly requested, as per UGA's written policies, that he be appointed an Advisory Committee after his first year of doctoral studies. See Exhibit A.

256.

No Advisory Committee was ever appointed to Plaintiff, in violation of UGA's written policies.

257.

On information and belief, of the three (3) students admitted into UGA CPH's DrPH program in 2015, Plaintiff, a Black male, and the second student, an African-American female were both denied an Advisory Committee, while the third student, a White female, was granted an Advisory Committee.

258.

In the 2019 Spring Semester, Plaintiff was among six (6) similarly situated doctoral students, from different UGA colleges and graduate programs, who were referred to UGA's Office of Academic Honesty and Integrity for alleged plagiarism violations of UGA's Academic Honesty Policy.

259.

On information and belief, Plaintiff was the only Black student of these six (6) doctoral students.

260.

All six (6) of the similarly situated doctoral students, including Plaintiff, admitted responsibility for plagiarism, as plagiarism is any intentional or unintentional submission of material facts that violates the academic honesty policy.

261.

Plaintiff was the only instance where a doctoral student's alleged plagiarism violation was not resolved at the Facilitated Discussion stage, because Plaintiff was a Black doctoral student.

262.

 Despite UGA's Academic Honesty Policy stating, "The forums used in academic honesty matters are intended to enhance educational opportunities while providing appropriate consequences when academic dishonesty occurs" (See Exhibit F, Page 3), Plaintiff's alleged academic dishonesty was not resolved at the Facilitated Discussion stage because Dr. Brittani L. Harmon, as instructed by Dr. Stuart Feldman, would not negotiate an appropriate consequence to Plaintiff's

inadvertent "plagiarism" (by his submission of the wrong document) of anything less than Plaintiff's arbitrary, capricious, and conscience shocking dismissal from the DrPH program.

263.

As previously stated, the AHP found extraordinary circumstances in Plaintiff's case of inadvertent "plagiarism" (by his submission of the wrong document) that warranted the imposition of a consequence less than the minimums outlined in UGA's Academic Honesty Policy, and yet Dr. Brittani L. Harmon, as instructed by Dr. Stuart Feldman, would not accept anything less than Plaintiff's arbitrary, capricious, and conscience shocking dismissal from the DrPH program.

264.

Unlike Plaintiff, being a Black doctoral student, none of the other five (5) similarly situated doctoral students who admitted responsibility for plagiarism were dismissed from UGA.

265.

Plaintiff's dismissal was not an academic decision.

266.

Plaintiff's dismissal was motivated by bad faith or ill will.

70

267.

Plaintiff's dismissal was motivated by discrimination based on Plaintiff's race.

268.

Plaintiff's dismissal was motivated by discrimination based on Plaintiff's national origin.

269.

The actions towards Plaintiff by UGA, described herein, were motivated by discrimination based on Plaintiff's race.

270.

The actions towards Plaintiff by UGA, described herein, were motivated by discrimination based on Plaintiff's national origin.

271.

The actions of all agents and employees of UGA alleged herein were in furtherance of and within the scope of UGA's business.

272.

Plaintiff has suffered economic injury due to UGAs willful and arbitrary violation of Plaintiff's rights.

273.

UGA's actions resulted in an "academic death penalty" against Plaintiff.

274.

As a result of UGA's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

275.

As a result of UGA's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

276.

Plaintiff has suffered economic injury due to UGAs willful discrimination against him with Plaintiff having taken out loans to attend UGA for four (4) years in the amount of $72,900.

*COUNT IV - RACE DISCRIMINATION 42 U.S.C. § 1981*

277.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 151.

278.

This race discrimination action is brought pursuant to 42 U.S.C. § 1981 (race), as amended.

279.

Plaintiff is Black, and thus a member of a protected class.

280.

Plaintiff was the only Black male student in a cohort of three (3) students admitted into UGA CPH's DrPH program in 2015.

281.

Plaintiff chose to matriculate to UGA because of UGA CPH's published commitment to provide a Doctoral Advisory Committee one year into a student's progression into the DrPH program that will support students towards successful completion of the doctoral program.

282.

The DrPH Advisory Committee is appointed to a student after their first year of residence in the DrPH program and,

> "The advisory committee, in consultation with the student, is charged with planning the student's program of study. It is also charged with approving the program of study, arranging the comprehensive written and oral examinations, approving a subject for the dissertation, approving the completed dissertation, and approving the student's defense of his or her

research. The committee should advise the student of required research skills and other requirements." See Exhibit A.

283.

Throughout Plaintiff's doctoral studies at UGA, he repeatedly requested, as per UGA's written policies, that he be appointed an Advisory Committee after his first year of doctoral studies. See Exhibit A.

284.

No Advisory Committee was ever appointed to Plaintiff, in violation of UGA's written policies.

285.

On information and belief, of the three (3) students admitted into UGA CPH's DrPH program in 2015, Plaintiff, a Black male, and the second student, an African-American female were both denied an Advisory Committee, while the third student, a White female, was granted an Advisory Committee.

286.

In the 2019 Spring Semester, Plaintiff was among six (6) similarly situated doctoral students, from different UGA colleges and graduate programs, who were referred to UGA's Office of Academic Honesty and Integrity for alleged plagiarism violations of UGA's Academic Honesty Policy.

287.

On information and belief, Plaintiff was the only Black student of these six
(6) doctoral students.

288.

All six (6) of the similarly situated doctoral students, including Plaintiff,
admitted responsibility for plagiarism, as plagiarism is any intentional or
unintentional submission of material facts that violates the academic honesty
policy.

289.

Plaintiff was the only instance where a doctoral student's alleged plagiarism
violation was not resolved at the Facilitated Discussion stage, because Plaintiff was
a Black doctoral student.

290.

Despite UGA's Academic Honesty Policy stating, "The forums used in
academic honesty matters are intended to enhance educational opportunities while
providing appropriate consequences when academic dishonesty occurs" (See
Exhibit F, Page 3), Plaintiff's alleged academic dishonesty was not resolved at the
Facilitated Discussion stage because Dr. Brittani L. Harmon, as instructed by Dr.
Stuart Feldman, would not negotiate an appropriate consequence to Plaintiff's

inadvertent "plagiarism" (by his submission of the wrong document) of anything less than Plaintiff's arbitrary, capricious, and conscience shocking dismissal from the DrPH program.

291.

As previously stated, the AHP found extraordinary circumstances in Plaintiff's case of inadvertent "plagiarism" (by his submission of the wrong document) that warranted the imposition of a consequence less than the minimums outlined in UGA's Academic Honesty Policy, and yet Dr. Brittani L. Harmon, as instructed by Dr. Stuart Feldman, would not accept anything less than Plaintiff's arbitrary, capricious, and conscience shocking dismissal from the DrPH program.

292.

Unlike Plaintiff, being a Black doctoral student, none of the other five (5) similarly situated doctoral students who admitted responsibility for plagiarism were dismissed from UGA.

293.

Plaintiff's dismissal was not an academic decision.

294.

Plaintiff's dismissal was motivated by bad faith or ill will.

295.

Plaintiff's dismissal was motivated by discrimination based on Plaintiff's race.

296.

Plaintiff's dismissal was motivated by discrimination based on Plaintiff's national origin.

297.

The actions towards Plaintiff by UGA, described herein, were motivated by discrimination based on Plaintiff's race.

298.

The actions towards Plaintiff by UGA, described herein, were motivated by discrimination based on Plaintiff's national origin.

299.

The actions of all agents and employees of UGA alleged herein were in furtherance of and within the scope of UGA's business.

300.

Plaintiff has suffered economic injury due to UGAs willful and arbitrary violation of Plaintiff's rights.

301.

UGA's actions resulted in an "academic death penalty" against Plaintiff.

302.

As a result of UGA's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

303.

As a result of UGA's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

304.

Plaintiff has suffered economic injury due to UGAs willful discrimination against him with Plaintiff having taken out loans to attend UGA for four (4) years in the amount of $72,900.

*COUNT V - BREACH OF CONTRACT*

305.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 151.

306.

Pursuant to UGA's published policies, procedures and other information, Plaintiff and Defendant were in contract with one another as Plaintiff pursued his doctoral degree.

307.

Throughout Plaintiff's doctoral studies at UGA, he repeatedly requested, as per UGA's written policies, that he be appointed an Advisory Committee after his first year of doctoral studies. See Exhibit A.

308.

No Advisory Committee was ever appointed to Plaintiff, in violation and breach of UGA's written policies.

309.

According to UGA's written policies, whether a student passes or fails their comprehensive exam course is decided by the written votes of the student's Advisory Committee, with no more than one dissenting vote allowed in passing a student. See Exhibit B.

310.

Plaintiff was never assigned an Advisory Committee during Plaintiff's doctoral studies at UGA, in violation and breach of UGA's policies, thus,

according to UGA's written policies, it is impossible that Plaintiff could have failed his second attempt at the comprehensive exam course, let alone Plaintiff's first attempt at the comprehensive exam course, because no Advisory Committee was assigned to Plaintiff to even vote on whether to pass or fail Plaintiff.

311.

UGA's Academic Honesty Policy states that prior to any finding made regarding a student's alleged violation of the Academic Honesty Policy, the instructor shall permit the student to complete all required academic work and shall evaluate and grade all work except the assignment(s) involved in the accusation of dishonesty. See Exhibit F, Page 9.

312.

During Plaintiff's Continued Discussion, Dr. Brittani L. Harmon stated that she instructed the grading process on both written assignment questions of Plaintiff's comprehensive exam course halted immediately when one of the two assignment questions was flagged for alleged plagiarism, not just the assignment question that was flagged for alleged plagiarism, in violation and breach of UGA's Academic Honesty Policy.

313.

Despite UGA's Academic Honesty Policy stating prior to any finding made regarding a student's alleged violation of the Academic Honesty Policy, the instructor shall permit the student to complete all required academic work and shall evaluate and grade all work except the assignment(s) involved in the accusation of dishonesty (See Exhibit F, Page 9), Plaintiff's first assignment question of his comprehensive exam course, that was never flagged for any alleged plagiarism, was never graded, in violation and breach of UGA's Academic Honesty Policy.

314.

Plaintiff's DrPH comprehensive exam course is made up of multiple assignment questions, was graded on a Pass/Fail scale, and a "zero grade" on one assignment question in no way could have justly warranted an automatic failure of the comprehensive exam course without grading the other assignment questions.

315.

UGA's policy dictates that Plaintiff's other assignment questions in his comprehensive exam course was to be graded, but Plaintiff's other assignment question in his comprehensive exam course was not graded at all, and in doing so, UGA violated and breached its own Academic Honesty Policy.

316.

UGA's Academic Honesty Policy states that only the "instructor(s) who reported the matter have the right and responsibility to be present and to speak truthfully at the Continued Discussion." See Exhibit F, Page 10.

317.

UGA's Academic Honesty Policy states that the instructor who reported the matter, the student believed to have violated the policy, the Facilitator, and the AHP are the only participants allowed to make statements and ask questions during the Continued Discussion. See Exhibit F, Page 10.

318.

Despite UGA's policy, and despite only Dr. Brittani L. Harmon's name appearing on Plaintiff's confidential incident report as the name of the sole instructor reporting Plaintiff's alleged plagiarism, during the hearing on May 3, 2019, both Dr. Brittani L. Harmon and Dr. Stuart Feldman were allowed to act in a prosecutorial role against Plaintiff and spoke of Plaintiff's alleged plagiarism, in violation and breach of UGA's Academic Honesty Policy with Plaintiff.

319.

Despite UGA's policy, Dr. Stuart Feldman accompanied Dr. Brittani L. Harmon to Plaintiff's Continued Discussion, he made statements during Plaintiff's

Continued Discussion, and he actively advocated for Plaintiff's dismissal during Plaintiff's Continued Discussion, in violation and breach of UGA's Academic Honesty Policy.

320.

Despite not being an instructor who reported Plaintiff's alleged violation, Dr. Stuart Feldman attended and presented evidence at Plaintiff's Continued Discussion, in violation and breach of UGA's Academic Honesty Policy with Plaintiff.

321.

Despite not being an instructor who reported Plaintiff's alleged violation, Dr. Stuart Feldman, as the Interim Head of UGA's Department of HPAM and a professor emeritus, was allowed to make statements and influence the AHP at Plaintiff's Continued Discussion, in violation and breach of UGA's Academic Honesty Policy.

322.

Even if Dr. Brittani L. Harmon considered Dr. Stuart Feldman to be her accompanying advisor during Plaintiff's Continued Discussion, according to UGA's Academic Honesty Policy, "The advisors may not address the panel or other parties in attendance." See Exhibit F, Page 10.

323.

Dr. Stuart Feldman did in fact address the panel and the other parties at Plaintiff's Continued Discussion, in violation and breach of UGA's Academic Honesty Policy.

324.

According to UGA's Academic Honesty Policy, "When a Continued Discussion is scheduled [(a hearing in front of the AHP)], a written notice including a brief description of the alleged dishonesty, shall be delivered to the student, the instructor, and the Facilitator assigned by the Office of the Vice President for Instruction. The notice shall state the date, time and place of the meeting." See Exhibit F, Page 10.

325.

On May 3, 2019, the AHP found Plaintiff in violation of unauthorized assistance despite the hearing being solely about alleged plagiarism.

326.

On May 3, 2019, the AHP found Plaintiff in violation of unauthorized assistance despite Plaintiff's notice only containing the sole charge of possible plagiarism.

327.

Despite Plaintiff's notice containing the sole alleged dishonesty as being plagiarism, the AHP found Plaintiff in violation of unauthorized assistance during Plaintiff's Continued Discussion, in violation and breach of UGA's Academic Honesty Policy.

328.

Now when applying to study at other educational institutions, Plaintiff will be prejudiced when required to disclose that he was found in violation of unauthorized assistance, a charge for which UGA never provided Plaintiff notice.

329.

UGA's Academic Honesty Policy states that if the AHP determines that a subsequent violation occurred, the Multiple Violations Review Board will be convened to meet with the student and the Director for Academic Honesty to determine additional consequences for the multiple violations. See Exhibit F, Page 11.

330.

The AHP found Plaintiff in violation of a subsequent violation, unauthorized assistance, and yet UGA did not follow its policy of having the Multiple Violations Review Board convene to determine additional consequences for the multiple

violations, and instead lumped all the consequences for unintentional "plagiarism" and unauthorized assistance, for which Plaintiff received no notice, together during the Continued Discussion, in violation and breach of UGA's Academic Honesty Policy.

331.

UGA's Academic Honesty Policy states that, "If the Academic Honesty Panel finds that extraordinary circumstances warrant the imposition of a consequence less than the minimums . . . the Academic Honesty Panel shall state in writing the reasons for the extraordinary circumstances and why the assigned consequence is considered appropriate." See Exhibit F, Pages 13-14.

332.

The AHP found extraordinary circumstances in Plaintiff's case of alleged plagiarism, that warranted the imposition of a consequence less than the minimums outlined in UGA's Academic Honesty Policy, and yet the AHP failed to state the reasons for the extraordinary circumstances and why the assigned consequence of "NONE" was considered appropriate, in violation and breach of UGA's Academic Honesty Policy.

333.

UGA's breach of its contract with Plaintiff was more than de minimus, UGA failed to even maintain substantial compliance with its contract with Plaintiff, and UGA's actions resulted in an "academic death penalty" against Plaintiff.

334.

The actions of all agents and employees of UGA alleged herein were in furtherance of and within the scope of UGA's business.

335.

Plaintiff has suffered economic injury due to UGA's breach of contract with Plaintiff. O.C.G.A. § 13-6-2.

336.

As a result of UGA's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish. O.C.G.A. § 13-6-2.

337.

As a result of UGA's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income. O.C.G.A. § 13-6-2.

338.

Plaintiff has suffered economic injury due to UGA's breach of contract with Plaintiff having taken out loans to attend UGA for four (4) years in the amount of $72,900. O.C.G.A. § 13-6-2.

339.

Due to UGA's breach of contract with Plaintiff, UGA has taken away any reasonable opportunity for Plaintiff to ever obtain his doctoral degree, Plaintiff has suffered economic injury by the loss of earning capacity that would reasonably have resulted had Plaintiff received a doctoral degree in Public Health, to be determined at time of trial by expert testimony. O.C.G.A. § 13-6-2.

*COUNT VI - UNJUST ENRICHMENT*

340.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 151.

341.

As an alternate theory of recovery based on a failed contract between Plaintiff and UGA, Plaintiff pleads that UGA was unjustly enriched by Plaintiff.

342.

Plaintiff conferred a benefit on UGA via his payments for his courses in the DrPH program at UGA.

343.

Equity requires that UGA compensate the Plaintiff for this benefit.

344.

The design of UGA's DrPH program is to prepare graduates for senior level public health practice careers.

345.

The credits Plaintiff has earned at UGA's DrPH program are non-transferrable to other DrPH programs at different educational institutions, thus Plaintiff would have to completely start over at a different educational institution.

346.

UGA's decision to dismiss Plaintiff was arbitrary, capricious, or shocking to the conscience of any reasonable person.

347.

Plaintiff has had to prolong his doctoral education due to the actions of UGA.

348.

UGA violated its own policies and procedures in adjudicating Plaintiff's alleged academic dishonesty.

349.

When applying to study at other educational institutions, Plaintiff will be prejudiced when required to disclose that he was found in violation of unauthorized assistance, a charge that Plaintiff never received notice of from UGA.

350.

UGA violated its own policies and procedures in dismissing Plaintiff from the DrPH program.

351.

Plaintiff has suffered economic injury in the course of UGA's unjust enrichment with Plaintiff having taken out loans to attend UGA for four (4) years in the amount of $72,900.

352.

Plaintiff has not received just compensation for the $72,900 received by UGA.

353.

The failure of UGA to not refund Plaintiff's $72,900, especially since UGA

has dismissed Plaintiff and otherwise forever saddled him with this debt, would be

unjust.

354.

The actions of all agents and employees of UGA alleged herein were in

furtherance of and within the scope of UGA's business.

355.

Plaintiff has suffered economic injury due to UGA's unjust enrichment.

356.

As a result of UGA's actions, Plaintiff has suffered actual damages, non-

economic damages, embarrassment, humiliation, emotional harm, mental and

physical pain, and anguish.

357.

As a result of UGA's actions, Plaintiff has experienced economic and

general loss of educational opportunities, loss of employment opportunities, loss of

research opportunities, increased financial debt, and loss of future income.

358.

Plaintiff has suffered economic injury by the loss of earning capacity that would reasonably have resulted had Plaintiff received a doctoral degree in Public Health, to be determined at time of trial by expert testimony.

WHEREFORE, Plaintiff, AREBE TAYLOR requests judgment against Defendant, BOARD OF REGENTS OF UNIVERSITY SYSTEM OF GEORGIA d/b/a THE UNIVERSITY OF GEORGIA and that the Court:

### PRAYER - COUNT I - VIOLATION OF PROCEDURAL DUE PROCESS - 42 § 1983

A) Permit Plaintiff's claim be tried before a jury;
B) Enter Judgment against Defendant, BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA d/b/a THE UNIVERSITY OF GEORGIA for its violation of 42 U.S.C. § 1983;
C) Grant a permanent injunction against UGA prohibiting it from engaging the practices or policies described herein which interfere with, or fail to fulfill, the rights of its students;
D) Order that UGA reinstate Plaintiff in its DrPH program;
E) Order that UGA allow Plaintiff to retake the comprehensive exam course;
F) Order that UGA designate an experienced individual who is responsible for ensuring student's civil rights are not being violated as here;
G) Order that UGA adopt and publish academic honesty procedures that incorporate appropriate due process standards;

H) Order that all agents and employees of UGA dealing with such
matters attend training specifically for the rights and obligations of a
post-secondary institution maintaining an academic honesty policy to
understand the due process rights of its students, under 42 U.S.C. §
1983, provided by experts outside of UGA;

I) Order that all agents and employees of UGA dealing with such
matters attend training specifically for the rights and obligations of a
post-secondary institution maintaining an academic honesty policy to
understand appropriate due process standards for its students, under
42 U.S.C. § 1983, provided by experts outside of UGA;

J) Award the Plaintiff special damages in the amount of $72,900;

K) Award the Plaintiff damages, including but not limited to actual
damages, consequential damages, general, non-economic damages,
and punitive damages in an amount to be determined at time of trial;

L) Award the Plaintiff special damages for lost earning capacity and lost
income in an amount to be determined at time of trial by expert
testimony;

M) Award the Plaintiff pre- and post-judgment interest at the maximum
rate allowed by law;

N) Award the Plaintiff reasonable attorney's fees pursuant to 42 U.S.C. §
1988, including litigation expenses, reasonable expert witness fees,
and the cost of this action; and

O) Grant such further relief as necessary to fulfill the purpose of 42
U.S.C. § 1983 due process enforcement, or as this Court otherwise
deems just and proper.

### *PRAYER - COUNT II - VIOLATION OF SUBSTANTIVE DUE PROCESS - 42 §*
### *1983*

A) Permit Plaintiff's claim be tried before a jury;

B) Enter Judgment against Defendant, BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA d/b/a THE UNIVERSITY
OF GEORGIA for its violation of 42 U.S.C. § 1983;

C) Grant a permanent injunction against UGA prohibiting it from
engaging the practices or policies described herein which interfere
with, or fail to fulfill, the rights of its students;

D) Order that UGA reinstate Plaintiff in its DrPH program;

E) Order that UGA allow Plaintiff to retake the comprehensive exam course;

F) Order that UGA designate an experienced individual who is responsible for ensuring student's civil rights are not being violated as here;

G) Order that UGA adopt and publish academic honesty procedures that incorporate appropriate due process standards;

H) Order that all agents and employees of UGA dealing with such matters attend training specifically for the rights and obligations of a post-secondary institution maintaining an academic honesty policy to understand the due process rights of its students, under 42 U.S.C. § 1983, provided by experts outside of UGA;

I) Order that all agents and employees of UGA dealing with such matters attend training specifically for the rights and obligations of a post-secondary institution maintaining an academic honesty policy to understand appropriate due process standards for its students, under 42 U.S.C. § 1983, provided by experts outside of UGA;

J) Award the Plaintiff special damages in the amount of $72,900;

K) Award the Plaintiff damages, including but not limited to actual damages, consequential damages, general, non-economic damages, and punitive damages in an amount to be determined at time of trial;

L) Award the Plaintiff special damages for lost earning capacity and lost income in an amount to be determined at time of trial by expert testimony;

M) Award the Plaintiff pre- and post-judgment interest at the maximum rate allowed by law;

N) Award the Plaintiff reasonable attorney's fees pursuant to 42 U.S.C. § 1988, including litigation expenses, reasonable expert witness fees, and the cost of this action; and

O) Grant such further relief as necessary to fulfill the purpose of 42 U.S.C. § 1983 due process enforcement, or as this Court otherwise deems just and proper.

*PRAYER - COUNT III - RACE AND NATIONAL ORIGIN DISCRIMINATION - 42 U.S.C. 2000d (TITLE VI)*

A) Permit Plaintiff's claim be tried before a jury;

B) Enter Judgment against Defendant, BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA d/b/a THE UNIVERSITY OF GEORGIA for its violation of 42 U.S.C. § 2000d (Title VI);

C) Grant a permanent injunction against UGA prohibiting it from engaging in any practice or policy which interferes such as here with, or fails to fulfill, the rights of its students of protected classes;

D) Order that UGA reinstate Plaintiff in its DrPH program;

E) Order that UGA allow Plaintiff to retake the comprehensive exam course;

F) Order that UGA designate an experienced individual who is responsible for ensuring rights of students in protected classes are not being violated;

G) Order that all agents and employees of UGA dealing with such matters attend training specifically on the rights and obligations of a post-secondary institution to understand the rights of its students, under 42 U.S.C. § 2000d (Title VI), provided by experts outside of UGA;

H) Award the Plaintiff special damages in the amount of $72,900;

I) Award the Plaintiff damages, including but not limited to actual damages, consequential damages, general, and non-economic damages in an amount to be determined at time of trial;

J) Award the Plaintiff special damages for lost earning capacity and lost income in an amount to be determined at time of trial by expert testimony;

K) Award the Plaintiff pre- and post-judgment interest at the maximum rate allowed by law;

L) Award the Plaintiff reasonable attorney's fees pursuant to 42 U.S.C. § 1988, including litigation expenses, reasonable expert witness fees, and the cost of this action; and

M) Grant such further relief as necessary to fulfill the purpose of 42 U.S.C. § 2000d (Title VI), or as this Court otherwise deems just and proper.

### PRAYER - COUNT IV - RACE DISCRIMINATION 42 U.S.C. 1981

A) Permit Plaintiff's claim be tried before a jury;

B) Enter Judgment against Defendant, BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA d/b/a THE UNIVERSITY OF GEORGIA for its violation of 42 U.S.C. § 1981;

C) Grant a permanent injunction against UGA prohibiting it from engaging in any practice or policy which interferes such as here with, or fails to fulfill, the rights of its students of protected classes;

D) Order that UGA reinstate Plaintiff in its DrPH program;

E) Order that UGA allow Plaintiff to retake the comprehensive exam course;

F) Order that UGA designate an experienced individual who is responsible for ensuring rights of students in protected classes are not being violated;

G) Order that all agents and employees of UGA dealing with such matters attend training specifically on the rights and obligations of a post-secondary institution to understand the rights of its students, under 42 U.S.C. § 1981, provided by experts outside of UGA;

H) Award the Plaintiff special damages in the amount of $72,900;

I) Award the Plaintiff damages, including but not limited to actual damages, consequential damages, general, punitive and non-economic damages in an amount to be determined at time of trial;

J) Award the Plaintiff special damages for lost earning capacity and lost income in an amount to be determined at time of trial by expert testimony;

K) Award the Plaintiff pre- and post-judgment interest at the maximum rate allowed by law;

L) Award the Plaintiff reasonable attorney's fees pursuant to 42 U.S.C. § 1988, including litigation expenses, reasonable expert witness fees, and the cost of this action; and

M) Grant such further relief as necessary to fulfill the purpose of 42 U.S.C. § 1981, or as this Court otherwise deems just and proper.

## *PRAYER - COUNT V - BREACH OF CONTRACT*

A) Permit Plaintiff's claim be tried before a jury;
B) That Judgment be entered against Defendant, BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA d/b/a THE UNIVERSITY OF GEORGIA. for its breach of contract;
C) Order that UGA reinstate Plaintiff in its DrPH program;
D) Order that UGA allow Plaintiff to retake the comprehensive exam course;
E) Award the Plaintiff special damages in the amount of $72,900;
F) Award the Plaintiff damages, including but not limited to actual damages, consequential damages, general, and non-economic damages in an amount to be determined at time of trial;
G) Award the Plaintiff special damages for lost earning capacity and lost income in an amount to be determined at time of trial by expert testimony;
H) Award the Plaintiff pre- and post-judgment interest at the maximum rate allowed by law;
I) Award the Plaintiff reasonable attorney's fees pursuant to O.C.G.A. § 13-6-11, including litigation expenses, reasonable expert witness fees, and the cost of this action; and
J) Grant such other and further relief as the Court deems just and proper.


## *PRAYER - COUNT VI - UNJUST ENRICHMENT*

A) Permit Plaintiff's claim be tried before a jury;
B) That Judgment be entered against Defendant, BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA d/b/a THE UNIVERSITY OF GEORGIA for its unjust enrichment;
C) Award the Plaintiff special damages in the amount of $72,900;
D) Award the Plaintiff pre- and post-judgment interest at the maximum rate allowed by law;
E) Award the Plaintiff reasonable attorney's fees, including litigation expenses, reasonable expert witness fees, and the cost of this action; and
F) Grant such other and further relief as the Court deems just and proper.

This 14th day of December, 2020.

/s/ Drew Mosley
Drew Mosley
Counsel for Plaintiff
GA Bar #: 526406

DREW MOSLEY, LLC
279 W. Crogan St.
Lawrenceville, GA 30046
O: (678) 225-0098
F: (678) 221-0230
drew@mlawmail.com

/s/ Wallace M. Berry
Wallace M. Berry
Counsel for Plaintiff
GA Bar #: 055668

BERRY LAW, LLC
368 West Pike St., Ste. 203
Lawrenceville, GA 30046
Office (678) 442-1126
Fax (678) 374-6023
Wallace@BerryLawGA.com

# <u>LOCAL RULE CERTIFICATION</u>

Undersigned counsel attests that this document was prepared in Times New Roman, 14-point font that complies with this Court's Rules.

Respectfully submitted this 14th day of December, 2020.

<u>/s/ Drew Mosley</u>                    <u>/s/ Wallace M. Berry</u>
Drew Mosley                              Wallace M. Berry
Counsel for Plaintiff                    Counsel for Plaintiff
GA Bar #: 526406                         GA Bar #: 055668

DREW MOSLEY, LLC                         BERRY LAW, LLC
279 W. Crogan St.                        368 West Pike St., Ste. 203
Lawrenceville, GA 30046                  Lawrenceville, GA 30046
O: (678) 225-0098                        Office (678) 442-1126
F: (678) 221-0230                        Fax (678) 374-6023
drew@mlawmail.com                        Wallace@BerryLawGA.com