## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Arebe Taylor,

                    Plaintiff,

v.                                        Case No. 1:20-cv-5048-MLB

Board of Regents of the University
System of Georgia d/b/a The
University of Georgia, et al.,

                    Defendants.

_____/

## OPINION & ORDER

Plaintiff Arebe Taylor sued the Board of Regents of the University of Georgia and several individuals associated with the University as professors, high-ranking officers (including the President of the University), and members of the Board of Regents. (Dkt. 11.) His complaint is long, rambling, and hard to follow, lasting 214 pages complete with a glossary, 691 individual paragraphs, and a 10-page prayer for relief. He then includes 45 pages of exhibits. All of this to challenge his dismissal from the University's doctoral program in the College of Public Health for failing to pass a necessary examination. He

sued the individual defendants in both their individual and official capacities. (Dkt. 11.) Defendants filed a motion to dismiss or (alternatively) for more definite statement. (Dkt. 26.) Plaintiff filed a motion for extension of time to respond to Defendants' motion, a motion for leave to file corrected response and brief to Defendants' motion, and a motion to strike Defendants' motion. (Dkts. 27; 32; 28.) The Court grants in part and denies in part Defendants' motion. The Court grants Plaintiff's motion for leave to file corrected response but denies Plaintiff's motions for extension of time and motion to strike.

## I. Background

In 2015, Plaintiff entered the University of Georgia's College of Public Health ("CPH") as a doctoral student in the Doctor of Public Health ("DrPH") program. (Dkt. 11 ¶ 53.) To complete that course, all students must pass an examination known as the DrPH Comprehensive Examination Course. (*Id.* ¶¶ 41–42.) Plaintiff failed his first attempt in Fall 2018. (*Id.* ¶ 67.) He tried again in Spring of 2019. (*Id.* ¶ 76.)

On April 3, 2019, the University's Academic Honesty and Student Appeals Office told Plaintiff that one of his answers had been flagged for possible plagiarism. (*Id.* ¶ 78.) That office scheduled a "Facilitated

Discussion" between Plaintiff, Defendant Harmon (a professor in the DrPH program), and an appointed facilitator for the purpose of determining whether Plaintiff had acted dishonestly and, if so, the appropriate consequences. (*Id.* ¶ 82.)[1] During the discussion, Defendant Harmon disclosed that Defendant Feldman (the interim head of the University's Department of Health Policy & Management ("HPAM")) had made a "predetermined dismissal decision" and thus any admission of plagiarism would result in an automatic dismissal from the DrPH program. (*Id.* ¶ 89.) The parties reached no agreement as to what had happened and the allegations of plagiarism were moved to a "Continued Discussion." (*Id.* ¶¶ 90–91, 97.) The University notified Plaintiff on April 25, 2019 that it had scheduled the "Continued Discussion" for May 3, 2019. (*Id.* ¶ 108.) The school's Academic Honesty Panel ("AHP") subsequently found Plaintiff in violation of plagiarism policies and unauthorized assistance. (*Id.* ¶¶ 139–40.) On May 6, 2019, Defendant Harmon issued Plaintiff a dismissal letter, stating he was being

---

[1] The Court hopes the individual Defendants will forgive any misidentification of their titles or responsibilities. The Court references Plaintiff's amended complaint for its understanding of these details.

dismissed based on the recommendation of the HPAM in the CPH. (*Id.* ¶ 160.)

Plaintiff immediately began a series of appeals to the highest levels in the University. On May 8, 2019, he appealed the AHP decision to the Office of the President. (*Id.* ¶ 190.) Defendant Cook (the University's Vice Provost for Diversity and Inclusion and Strategic University Initiatives) responded on May 20, finding the University has followed all policies and procedures. (*Id.* ¶¶ 190–91.) He then appealed the original decision to Dr. Marsha Davis, Interim Dean of the University's CPH. (*Id.* ¶ 192.) Defendant Wilson (Associate Dean for Academic Affairs for the CPH and chair of its Curriculum and Academic Program Committee) responded on June 7, reaching the same conclusion. (*Id.* ¶ 192–93.) Plaintiff appealed that conclusion to the University's Appeals Committee of the Graduate Council. (*Id.* ¶ 194.) Defendant Walcott (Associate Dean of the Graduate School and chair of the Graduate Council) agreed with Defendant Wilson. (*Id.* ¶¶ 194–95.) Plaintiff then appealed Defendant Walcott's decision to the University's Educational Affairs Committee on September 11. (*Id.* ¶ 196.) Defendant Farmer (the chair of that committee) affirmed Defendant Walcott's conclusion. (*Id.* ¶ 196–97.) He

next appealed Defendant Farmer's letter to Defendant Morehead (the President of the University), who also found the University program had followed all policies and procedures and had not denied Plaintiff any rights. (*Id.* ¶ 198–99.)  Plaintiff appealed Defendant Morehead's decision by submitting an application for discretionary review to the Board of Regents on November 25.  (*Id.* ¶ 200.)  Defendant Tate (Vice Chancellor of Legal Affairs of the Board of Regents) responded on February 17, 2020, stating the Discretionary Review Committee (Defendants Denley, MacCartney, Hicks, Jones, and Tate), found Plaintiff was not denied any rights and concluded all policies and procedures had been followed.  (*Id.* ¶¶ 200–01.)

On December 14, 2020, Plaintiff filed a complaint against Defendant Board of Regents of the University System of Georgia ("BOR"). (Dkt. 1.)  On March 31, 2021, he filed his amended complaint against all Defendants.  (Dkt. 11.)  The amended complaint alleges four Section 1983

claims, a Title VI claim, a Section 1981 claim, and a punitive damages claim. (*Id.*)

## II.  Motions for Extension of Time and Leave

Defendants moved to dismiss or for a more definite statement on June 1 and 2, 2021. (Dkts. 25, 26.)  Plaintiff filed a motion for extension of time to respond to Defendants' motion to dismiss (Dkt. 27), but several days later (and well before the due date) Plaintiff filed his response. (Dkt. 31.)  The Court thus denies as moot Plaintiff's motion for more time.

The day after filing his response, Plaintiff filed a motion for leave to file a corrected response, which attached that pleading.  (Dkt. 32.) When deciding whether to permit such an amendment

> the Court considers: (1) whether the adverse party will be prejudiced by the amendment; (2) whether the "amendment is necessary to ensure that the case is adjudicated fairly and justly;" and (3) whether the amendment will help resolve the litigation at an early date.

*Espinoza v. Galardi S. Enters., Inc.*, No. 14-21244, 2017 WL 4553451, at *5 (S.D. Fla. Oct. 12, 2017) (quoting *Factory Direct Tires, Inc. v. Cooper Tire & Rubber Co.*, No. 3:11CV255, 2012 WL 2873232, at *1 (N.D. Fla. June 13, 2012)).  Plaintiff's counsel states he was completing an Eleventh Circuit brief and appendix during the response period and was also on

vacation.  (Dkt. 32 ¶¶ 4, 6.)  He explains he made several errors and corrected them in the subsequent response.  (*Id.* ¶¶ 8–9.)  Defendants have not responded to Plaintiff's motion, so it is deemed unopposed.  LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").  Plaintiff also filed the corrected response before Defendants filed their reply brief, indicating they are not prejudiced by the amendment.  Consideration of the corrected response also does not change the Court's rulings.  For good cause shown, the Court grants Plaintiff's motion for leave to file corrected response.

## III.  Motion to Strike

On June 14, 2021, Plaintiff moved to strike Defendants' motion to dismiss and for entry of default judgment.  (Dkt. 28.)  Plaintiff contends Defendants' motion to dismiss is untimely and procedurally improper.  (*Id.* at 2.)

Here is what happened.  On March 31, 2021, Plaintiff filed his amended complaint.  (Dkt. 11.)  On April 1, 2021, the Court granted Defendant BOR's motion for extension of time to answer or otherwise respond to the complaint.  (April 1, 2021 Docket Entry.)  Defendant BOR's responsive pleading was due no later than the date of the

responsive pleadings for the defendants added in the amended complaint. (*Id.*)  Those Defendants responses were due within 60 days of April 1, 2021.  (Dkts. 12–24.)  Defendants' responses were thus due on or before June 1, 2021.  On June 1, 2021, Defendants filed their *brief* in support of their motion to dismiss and/or motion for more definite statement.  (Dkt. 25.)  On June 2, 2021, Defendants filed their *motion* to dismiss and/or motion for more definite statement.  (Dkt. 26.)  One might think a single day irrelevant.  One might also think the practice of law is hard enough without opposing counsel trying to take advantage of a simple mistake. But alas, not here.

Plaintiff, relying on *Jones v. BAC Home Loan Servicing, LP Countrywide Home Loans Servicing LP*, No. 1:10-CV-3268, 2011 WL 13319172 (N.D. Ga. Jan. 19, 2011), and *United National Insurance Co. v. Owl's Nest of Pensacola Beach, Inc.*, 3:05CV374, 2006 WL 1653380 (N.D. Fla. June 8, 2006), contends because Defendants' motion was filed the day after it was due and no request for leave was filed, the motion should be stricken.  (Dkt. 28-1 at 3–4.)  Defendants say two things in response. First, they say the "omission of the filing of the motion itself, which was named in Defendants' brief, was oversight on the part of counsel."  (Dkt.

33 at 2.)  In other words, a simple, harmless mistake.  Second, they say the cases Plaintiff cites are distinguishable since those parties never filed any responses to the pleadings at issue, while Defendants here filed their brief on the correct day and their motion just one day late.  *Jones*, 2011 WL 13319172, at *1 n.1; *United Nat. Ins.*, 2006 WL 1653380, at *3 & n.9. (Dkt. 25.)  Understandable.  For good cause shown, the Court denies Plaintiff's motion to strike Defendants' motion to dismiss.  (Dkt. 28.)

Plaintiff also contends Defendants' failure to timely respond "will result in default judgment being entered against Defendants. Therefore, default judgment should be entered against Defendants." (Dkt. 28-1 at 4.)  If a defendant fails to plead or otherwise defend a lawsuit within the time required by the Federal Rules of Civil Procedure and the plaintiff moves for default, the clerk must enter default.  *See* Fed. R. Civ. P. 55(a). After the clerk enters default, the "entry of a default judgment is committed to the discretion of the district court."  *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985).  First, the Court finds Defendants timely responded.  Second, Plaintiff never moved for default. The Court denies Plaintiff's motion to strike and for entry of default judgment.  The Court also denies Plaintiff's motion for sanctions which

is merely Plaintiff's reply in support of his motion to strike, requesting the Court strike Defendants' motion to dismiss and grant entry of default judgment.  (Dkt. 37.)

## IV.   Motion for More Definite Statement

Rule 12(e) provides: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e).  Upon a motion pointing to the purported defects and the details desired, the Court may order the filing of a more definite statement.  In considering such a motion, the Court should be mindful of the liberal pleading requirements of the Federal Rules of Civil Procedure, pursuant to which a "short and plain statement of the claim" will suffice. Fed. R. Civ. P. 8(a)(2).  A motion for a more definite statement is disfavored under the law and is "not to be used as a substitute for discovery." *Coughlin v. Wal-Mart Stores E., LP*, No. 8:07-cv-02189, 2008 WL 2704381, at *1 (M.D. Fla. July 8, 2008).  "The propriety of granting such a motion lies completely within the sound discretion of the trial

court." *Kapila v. Militzok*, No. 15-60764, 2015 WL 7272761, at \*4 (S.D. Fla. Nov. 18, 2015) (quoting *United States v. Metro Dev. Corp.*, 61 F.R.D. 83, 85 (N.D. Ga. 1971)).

Relatedly, so-called "shotgun pleadings" violate Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), by "fail[ing] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The four types of shotgun pleadings are:

> [First, and most commonly], a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as [Eleventh Circuit] published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1321–23 (footnotes omitted).  The Eleventh Circuit has made clear it has "little tolerance for shotgun pleadings," as "[t]hey waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

Defendants contend the amended complaint includes "looping repetitions of paragraphs, excessive narrating/commentating, immaterial allegations, and rampant factual and legal conclusions." (Dkt. 25 at 7.)  Plaintiff's complaint consists of 214 pages plus 45 pages of exhibits, including 691 paragraphs, seven counts, and a prayer for relief that exceeds ten pages.  (Dkt. 11.)  The complaint includes 54 pages (195 paragraphs) of "Facts as to Plaintiff."  (*Id.* ¶¶ 51–246.)  The Court finds the complaint contains sufficient hallmarks of a shotgun pleading to require a more definite statement because the complaint is "so vague or ambiguous that [a] party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

Plaintiff's complaint does not fall into the first category of shotgun pleadings because, while each count incorporates 246 paragraphs, none

of them adopt the allegations in the preceding counts.  *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (finding the plaintiff's complaint did not fall into the first category because none of the counts adopted the allegations in the preceding counts).  "It also does not fall into the third category because each count presents a unique cause of action. Nor does it fall into the fourth category because even though several counts target multiple defendants, these counts specify which of the defendants are responsible for which acts or omissions." *Id.* (internal quotation marks omitted).  But the complaint falls into the second category of shotgun pleadings because it is rife with immaterial factual allegations and indiscriminately incorporates 246 numbered paragraphs of factual allegations into all seven counts, "without any effort to connect or separate" which of those factual allegations relate to a particular count. *Id.*

Defendants argue, and the Court agrees, many paragraphs are repeated throughout the complaint in seemingly endless loops.  (Dkt. 25 at 10.)  Paragraph 89 states that during the Facilitated Discussion on April 18, 2019, Defendant Harmon disclosed that Defendant Feldman and the HPAM had made a predetermined dismissal decision, and that

13

any subsequent admission to the plagiarism by Plaintiff would warrant an automatic dismissal from the program. (Dkt. 11 ¶ 89.) Paragraphs 257, 382, 465, 559, and 631 allege a similar fact with only slight variations. (*Id.* ¶¶ 257, 382, 465, 559, 631.) Paragraph 127 alleges Defendant Feldman, as the Interim Head and Graduate Coordinator of the University's HPAM, was allowed to, and did, make statements with authority, and influence the AHP at Plaintiff's Continued Discussion. (*Id.* ¶ 127.) And paragraph 128 alleges the University's Academic Honesty Policy states, "advisors may not address the panel or other parties in attendance." (*Id.* ¶ 128.) These facts are also alleged in paragraphs 265–66, 406–07, 489–90, 566–67, and 638–39. (*Id.* ¶¶ 265–66, 406–07, 489–90, 566–67, 638–39.) These are just two examples of repeated paragraphs that clog Plaintiff's amended complaint, rendering it incompatible with Rule 8.

Defendants also contend, and the Court agrees, the complaint includes paragraphs without factual or legal import, serving only as commentary. (Dkt. 25 at 10.) Paragraph 250, which is repeated at paragraphs 309, 375, and 459, states, "[i]mpartiality is the essence of fair judicial treatment, and fairness is the essence of impartial judicial

treatment." (Dkt. 11 ¶¶ 250, 309, 375, 459.)  The complaint also alleges the student population of the University System of Georgia equals "roughly the population of each of the following countries (not all combined): Belize, The Bahamas, Barbados, and Iceland. Many countries are much smaller, and many more are not that much more populous." (*Id.* ¶ 31.)  Paragraph 60 also claims Plaintiff's interest in healthcare supply chain management "was inspired . . . during the 10 years of bloody civil wars in his native country, Sierra Leone." (*Id.* ¶ 60.)  These are just examples of the editorial commentary throughout the complaint.  None of this is relevant or should be included.

Defendants finally argue, and the Court agrees, the complaint contains factual and legal conclusions. (Dkt. 25 at 13.)  Paragraphs 287 and 352 state Defendants Harmon and Feldman "failed to exercise professional judgment such that their decision is not entitled to heightened deference." (Dkt. 11 ¶¶ 287, 352.)  The Court thus grants Defendants' motion to the extent it requests a more definite statement.

The Court has not attempted to identify all the ways in which the amended complaint violates Rule 8 and the derivative rule against shotgun pleadings.  Defendants have identified many other problems

with which the Court agrees.   (Dkt. 25 at 10–15.)   Plaintiff should endeavor to address all of these issues, lest he be back in the same position with his next pleading.   Having reviewed the amended complaint, and in an effort to assist counsel for Plaintiff, the Court believes Plaintiff's allegations can be stated fully in a complaint of no more than 50 (maybe 60) pages. This is not a requirement. Plaintiff may (of course) file whatever he believes necessary.   The Court merely provides this advice as a sort of governor on what appears to be counsel's verbosity.

## V.   Conclusion

The Court **DENIES** Plaintiff's Motion to Strike Defendant's Motion to Dismiss.   (Dkt. 28.)   The Court **DENIES** Plaintiff's Motion for Sanctions.  (Dkt. 37.)

The Court **GRANTS** Plaintiff's Motion for Leave to File Corrected Response.  (Dkt. 32.)

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss or Motion for More Definite Statement. (Dkt. 26.)  The Court **ORDERS** Plaintiff to file, on or before January 28, 2022, an amended complaint that clearly describes his claims and that

otherwise complies with the pleading requirements of the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 8, 10, 11.  Failure to do so will result in dismissal of this case.  The Court cautions Plaintiff that his amended complaint will supersede his current complaint.  So he must include in his amended complaint anything he wants the Court to consider.  He cannot simply incorporate prior filings into his amended complaint by reference.  And the Court will not consider prior filings either.  His amended complaint will control.  **If Plaintiff fails to comply with any of the instructions contained in this Order, the Court will dismiss his case.**

The Court **DENIES AS MOOT** Plaintiff's Motion for Extension of Time to Respond (Dkt. 27), Defendants' Motion to Stay (Dkt. 30) and Plaintiff's Motion to Strike Reply Brief (Dkt. 36).

**SO ORDERED** this 9th day of December, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

17